Joseph McKENNON, Plaintiff,

v.

CSX TRANSPORTATION, INC., Defendant.

No. 3:93–0206.

United States District Court, M.D. Tennessee, Nashville Division.

March 22, 1995.

E.J. Leizerman, Toledo, OH, for plaintiff.

Gareth S. Aden and Wayne Lindsey Robbins, Jr., Gullett, Sanford, Robinson & Martin, Nashville, TN, for defendant.

## MEMORANDUM

ECHOLS, District Judge.

Presently pending before this Court is Defendant's Motion for Summary Judgment to which the Plaintiff has responded in opposi-tion.  For the reasons outlined herein, Defendant's Motion for Summary Judgment is GRANTED.

Plaintiff was a CSX employee who brings this Federal Employers' Liability Act ("FELA") claim as a result of a work-related injury to his left shoulder.  Plaintiff alleges that Defendant's negligence caused such injury.  Defendant has moved for summary judgment.

█ In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).  A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met.  *See Martin v. Kelley,* 803 F.2d 236, 239 n. 4 (6th Cir.1986).  The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510.  If so, summary judgment dismissal is inappropriate.

Plaintiff was a foreman with the Defendant, CSX.  On the day of his injury, he and his crewman joined the assistant roadmaster and others to repair a switch that had been damaged by a derailment.  (Plaintiff's Dep. at 42–43.)  After a safety meeting, the men began replacing damaged railroad ties.  (*Id.* at 47–49.)  Plaintiff and his partner worked all day spiking tie plates, which hold the rails, to new ties which were inserted beneath the plates.  (*Id.* at 50–52.)  Plaintiff's partner would insert a tie under the tie plate and position the plate on top of the tie.  Plaintiff then would secure each plate by driving a spike through it and into the tie.  (*Id.* at 56–57.)  In driving the spikes, Plaintiff used a "spike maul," a nine-pound tool similar to a sledgehammer.  (*Id.* at 35.)

It is undisputed that Plaintiff has used a spike maul for approximately twenty years, and he has never known of such an injury in all those years. (*Id.* at 62.) On the day in question, Plaintiff was performing his job the way he always did: (1) he inspected the spike maul to insure it was not defective; (2) he ensured that he had good footing; (3) he ensured that his partner was out of the way; and (4) he swung the maul as he always did. (*Id.* at 53–54, 57–58.) As Plaintiff reached the top of his swing, he felt a "pull" and then a sharp pain in his left shoulder. (*Id.* at 58–59.) Plaintiff's injury was diagnosed as a tear in the rotator cuff ligament, which required surgery to repair.

It is undisputed that there were no hazards in the work area. (*Id.* at 53–54.) Plaintiff concedes that neither he nor his fellow workers had violated any safety rule or regulation. (*Id.* at 111.) Plaintiff further concedes that his spike maul was not defective in any way. (*Id.* at 53–54.) It is undisputed that the group was working at normal pace on that day, and that the individuals composing the group were free to take breaks as necessary. (*Id.* at 122–23.) Prior to the incident, Plaintiff's shoulder had given him no problems. He had not asked to be relieved of his duties that day. Indeed, he had no reason to anticipate that there was any reason to do so. (*Id.* at 59–60.) Plaintiff has "no idea" why or how the injury occurred. (*Id.* at 63–64.)

██ However, Plaintiff contends that Defendant could have done any of three things to prevent his injury. First, he contends that CSX should have provided the group a machine to assist in driving the spikes. Second, Plaintiff contends that Defendant should have provided more workmen to perform the job that he and four other workmen were doing. Finally, Plaintiff contends that CSX should have used younger men to drive spikes.

FELA provides:

Every common carrier by railroad while engaging in commerce between any of the several states ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

45 U.S.C. § 51 (1988).

██ FELA does not make the railroad an insurer. To recover under FELA, "a plaintiff must 'prove the traditional common-law elements of negligence: duty, breach, foreseeability, and causation.'" *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir.1990) (quoting *Robert v. Consol. Rail Corp.*, 832 F.2d 3, 6 (1st Cir.1987)); *Inman v. Baltimore & O. R.R.*, 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959); *Brady v. Southern Ry. Co.*, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943). Clearly, Defendant had a duty to provide a safe workplace for Plaintiff. However, Plaintiff has established neither a breach of that duty, nor the foreseeability of Plaintiff's injury.[1] Under FELA, an employer is not liable for failing to provide a safe work environment if the employer had no reasonable way of knowing that potential hazards existed. *Gallick v. Baltimore & O. R.R.*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963); *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

First, Plaintiff contends that a machine should have been used. Plaintiff's crew generally did not use the machine and normally used spike mauls instead. (Plaintiff's Dep. at 76.) On the day of the injury, one of the workers suggested using the machine, but the assistant roadmaster refused. (*Id.* at 64–65.) Plaintiff admits that his spike maul was not defective and was a safe and appropriate tool for the job he was performing. (*Id.* at 53–54.) It simply is Plaintiff's contention

---

1. Plaintiff correctly argues that under FELA, the causation requirement is modified so that if the railroad's negligence could constitute even the slightest cause of the injury, the case must be submitted to the jury. *Rogers v. Missouri Pac.* *R.R.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). However, because the Plaintiff has failed to prove that the railroad breached any duty to him, the causation issue is moot.

that the use of the machine "would have saved [the workers from] using [spike mauls] all day." (*Id.* at 70.)

The fact that there may have been an automated, or safer method, of work does not automatically render the chosen method unsafe or negligent for purposes of FELA. *Chicago R.I. & Pac. R.R. v. Lint,* 217 F.2d 279, 282–83 (8th Cir.1954). Under FELA, the proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task. *Stillman v. Norfolk & W. Ry.,* 811 F.2d 834 (4th Cir.1987). "That there are other, arguably more advanced, methods in use by the defendant for [accomplishing the task at hand] is of no significance where the method in use by [the plaintiff] was not an inherently unsafe one." *Soto v. Southern Pac. Transp.,* 644 F.2d 1147, 1148 (5th Cir.1981), *cert. denied,* 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386 (1981). Where "[t]he task at which [plaintiff] was injured was one that could be safely done by the method which he was told to use and was using," the employer is not negligent by refusing to provide plaintiff with an automated means for accomplishing his task. *Id.*

Plaintiff admits that he has used the spike maul safely for twenty years. Plaintiff concedes that the maul he used was not defective in any way. He further concedes that the spike maul is a safe and appropriate way to drive spikes. In fact, Plaintiff's crew generally used spike mauls to drive spikes, rather than using the machine. That easier, automated means were available is irrelevant to the issue in this case. Based on the Plaintiff's own testimony, this Court finds that Defendant's failure to allow the use of the machine did not constitute negligence or create an unreasonably unsafe working condition.

Plaintiff also maintains that the use of more men on the job would have prevented his injury. That is, he claims that Defendant was negligent in not assigning more workers to the task that day, and that such negligence resulted in his shoulder injury. However, Plaintiff admits that the spiking job was properly a two-person job. (*Id.* at 41.)

Plaintiff cannot state that anyone in his group complained to the assistant roadmaster about the allegedly inadequate number of workers assigned to the job; Plaintiff concedes that he never so complained. (*Id.* at 120–21.) In summary, Plaintiff's complaint is that "it would have been nice to have more men." (*Id.* at 109–10.)

Once again, the fact that Plaintiff's job would have been easier if there had been more workers does not constitute negligence on the part of Defendant, nor does it create an unreasonably unsafe work environment. Assuming arguendo that Defendant's failure to supply more workers was a breach of its duty, Plaintiff still has not shown how the absence of additional workers caused his injury. Plaintiff has admitted that the task he was performing was a two-person job. This is different from a case in which the Plaintiff was injured because he was required to lift or drag a 600 pound barrel by himself. *See, e.g., Ross v. Chesapeake & O. Ry.,* 421 F.2d 328 (6th Cir.1970). The lifting of a huge object obviously requires more than one person, whereas Plaintiff has admitted that driving spikes requires only two persons. In this case, more workers simply would have meant that the crew finished its job more quickly. It is too tenuous to argue that more workers would have prevented Plaintiff's injury.

Plaintiff's third complaint is that there were younger men present who could have done the spiking. (*Id.* at 113.) However, Plaintiff refuses to admit that he was in any way unqualified or unable to do the work he was doing. Likewise, he refuses to say that Defendant should not have allowed him to work that day. (*Id.* at 117.) He concedes that there were no medical restrictions on his ability to work. (*Id.* at 114.) Plaintiff knows of no work rule prohibiting persons his age from spiking. (*Id.* at 114–15.) Plaintiff ultimately concedes that the younger men on the site that day were doing the same work he was. (*Id.* at 118.)

This argument is entirely without merit. It raises a serious question of whether Plaintiff's employer could replace him with a younger worker without violating the Age Discrimination in Employment Act, which prohibits an employer's discrimination

against older workers in favor of younger ones. *See* 29 U.S.C. §§ 621 to 634. It would be overreaching for this Court to hold that CSX was negligent because it did not assign the most physically challenging tasks to the younger men.

Finally, this Court turns to the issue of foreseeability of Plaintiff's injury. Where an employer had no reasonable way to know of the existence of a potential hazard, the employer cannot be held liable for its failure to prevent that hazard. *Gallick v. Baltimore & O. R.R.*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963); *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). In this case, Plaintiff admits he had experienced no previous shoulder problems. He further admits that the injury was a surprise, and therefore unforeseeable, to him. He still does not know why or how it occurred. Indeed, Plaintiff admits that he had worked with spike mauls for twenty years and had never heard of such an injury occurring. Based on the evidence presented by Plaintiff himself, Defendant could not have foreseen Plaintiff's injury.[2]

"When the evidence [in a case] is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict," a court should not submit the case to a jury, but should grant summary judgment. *Brady v. Southern Ry. Co.*, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943). Based on the testimony of the Plaintiff, the Court concludes that there is no issue of material fact and that there could be only one reasonable conclusion in this case. Defendant was not negligent, nor did it provide unreasonably unsafe work conditions. Plaintiff's injury, though unfortunate, was not caused by anything Defendant negligently did or failed to do. It just happened. Finding that Defendant was not in any way responsible for Plaintiff's injury, Defendant's motion for summary judgment is GRANTED. This case is accordingly DISMISSED.

---

2. Plaintiff has submitted the affidavit of his surgeon, who concludes that it was foreseeable that Plaintiff's shoulder would be injured from the task he was performing. (Docket Entry No. 17.) The physician further concludes that Plaintiff's assignment constituted an "unsafe work practice." (*Id.*) This information constitutes the entire substance of the physician's affidavit. This affidavit is the ONLY evidence in the record which supports Plaintiff's complaint. Indeed, even Plaintiff's own deposition testimony refutes his claim that Defendant was negligent. The Court finds that the physician's affidavit does not create a genuine issue of material fact.