# IN THE COURT OF APPEALS OF TENNESSEE, AT JACKSON

FILED

**December 18, 1998**

Shelby County Circuit Court

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **THEO JENNINGS**, | ) | Shelby County Circuit Court |
|  | ) | No. 76115-6 T.D. |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9803-CV-00056 |
|  | ) |  |
| **ILLINOIS CENTRAL RAILROAD** | ) |  |
| **COMPANY**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

From the Circuit Court of Shelby County at Memphis.
**Honorable George H. Brown, Jr., Judge**

**James D. Causey**,
CAUSEY, CAYWOOD, TAYLOR, McMANUS & BAILEY, Memphis, Tennessee
**Jerry E. Hinchey**,
**H. Chris Christy**,
JONES & GRANGER, North Little Rock, Arkansas
Attorneys for Plaintiff/Appellant.

**Harold W. McLeary, Jr.**,
**Estelle C. Gaerig**,
SHUTTLEWORTH, SMITH, WILLIAMS, SABBATINI & HARPER, Memphis, Tennessee
Attorneys for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**TATUM, Sr. J.**: (Concurs)

Plaintiff Theo Jennings appeals the trial court's order entering summary judgment in favor of Defendant/Appellee Illinois Central Railroad Company. We affirm the trial court's judgment based on our conclusion that, even when viewed in the light most favorable to Jennings, the evidence fails to support a cause of action against the Railroad under the Federal Employer's Liability Act.

On July 11, 1995, Jennings was injured while working as a trackman for the Railroad. As part of his job duties, Jennings used a maul hammer to drive spikes into railroad ties. On that day, when Jennings hit a spike with the maul, the wooden maul handle broke off at the iron head of the maul. The iron maul head struck Jennings in the knee, resulting in a disabling injury to Jennings. A subsequent inspection of the maul handle revealed that the handle had broken because it was "dry rotted."

Jennings brought this action against the Railroad under the Federal Employer's Liability Act (FELA). *See* 45 U.S.C.A. §§ 51--60 (West 1986). Jennings' complaint asserted that the Railroad was negligent in, *inter alia*, failing to provide Jennings with a reasonably safe workplace and failing to furnish him with reasonably safe equipment.

After its counsel deposed Jennings, the Railroad filed a motion for summary judgment, contending it was entitled to a judgment as a matter of law on the issue of negligence. Jennings' deposition revealed that, at the time of his injury, he had worked for the Railroad for twenty-five years. During his employment, Jennings had used air hammers, hydraulic hammers, and regular mauls to drive spikes. Jennings and his coworkers were required to use the regular mauls when the automated hammers were not working. On the day of his injury, as required by the Railroad, Jennings carefully performed a visual inspection of the maul's head and handle prior to using it. In the past, Jennings had used mauls when their handles had broken. If Jennings had observed a crack in the maul handle, he would not have used the maul. In this case, Jennings did not observe anything wrong with the maul. Despite this precaution, the maul handle broke and Jennings was injured. Jennings knew that maul handles could break even when a visual inspection revealed nothing wrong with the handle.

In opposing the Railroad's motion for summary judgment, Jennings filed the affidavit of one of his coworkers and the affidavit of a safety engineer. The affidavit of Jennings' coworker confirmed that, prior to Jennings' injury, several identical spike mauls also had broken off at the maul head as a result of the handle "dry rotting." The coworker averred that the mauls "had been left out in the weather in the back of company trucks unprotected from rain."

Although the maul handle apparently was not available for inspection, the safety engineer, Jack Larks, was able to inspect the head of the maul which allegedly caused Jennings' injury. During his examination of the maul head, Larks discovered a date stamp of 1980. Larks opined that, "[b]ased on the age of the maul, the handle should have been periodically inspected, tested and/or replaced due to the stresses applied to the handle as a result of its normal and intended uses." (While the maul's head contained a date stamp of 1980, we find no evidence in the record as to the age of the wooden handle which broke.) Larks also indicated that other equipment was available to the Railroad which would have presented "safer alternatives to using a maul to drive spikes manually." Specifically, Larks stated that, in July 1995, "there were hydraulic and pneumatic spike hammers and automatic spike driving machines that could have been used to drive the spikes that Mr. Jennings was driving, which would have prevented the danger of the maul breaking."

After considering the foregoing evidence, the trial court granted the Railroad's motion for summary judgment and dismissed Jennings' FELA claim with prejudice. This appeal followed.

In enacting the FELA, Congress intended to depart from "common law principles of liability as a 'response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety.'" *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 807 (6th Cir. 1996) (quoting *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329 (1958)). Accordingly, Congress enacted the FELA as a "remedial and humanitarian statute" to "afford relief to employees from injury incurred in the railway industry." *Aparicio*, 84 F.3d at 807 (quoting *Edsall v. Penn Cent. Transp. Co.*, 479 F.2d 33, 35 (6th Cir.), *cert. denied*, 414 U.S. 1040 (1973)).

One of the ways in which Congress accomplished this goal was to provide for the

application of a relaxed standard of proof in FELA cases. *Ridings v. Norfolk S. Ry. Co.*, 894 S.W.2d 281, 286 (Tenn. App. 1994). Under this relaxed standard of proof, a plaintiff need not present the same quantum of evidence as would be required in an ordinary negligence action. Instead, the plaintiff is required only to prove that the "railroad's negligence played *any part, even the slightest*, in producing injury or death." *Id*. (emphasis added) (citing *Hall v. Norfolk S. Ry. Co.*, 829 F. Supp. 1571 (N.D. Ga. 1993); *Mitchell v. Missouri-Kansas-Texas R.R. Co.*, 786 S.W.2d 659 (Tex.), *cert. denied*, 498 U.S. 896 (1990)).

Although a relaxed standard of proof applies in FELA cases, "[t]he FELA does not make railroads the insurers of their employees." *Ridings*, 894 S.W.2d at 286. Evidence of the mere occurrence of an accident is not sufficient to render an employer liable under the FELA. *Id*. (citing *Southern Ry. Co. v. Bradshaw*, 37 S.E.2d 150 (Ga. Ct. App. 1946)). In order to prevail on a FELA claim, the plaintiff must present "more than a scintilla" of evidence on each element of his or her claim. *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 306 (6th Cir.), *cert. denied*, 118 S. Ct. 67 (1997); *accord Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 808-10 (6th Cir. 1996). Specifically, the plaintiff must present "more than a scintilla" of evidence to prove the following elements:

> (1)    [that] an injury occurred while the plaintiff was working within the scope of his or her employment with the railroad,
>
> (2)    [that] the employment was in the furtherance of the railroad's interstate transportation business,
>
> (3)    [that] the employer railroad was negligent, and
>
> (4)    [that] the employer's negligence played some part in causing the injury for which compensation is sought under the [FELA].

*Aparicio*, 84 F.3d at 810; *accord Smelser*, 105 F.3d at 306 n.4.

Congress has granted federal and state courts concurrent jurisdiction to determine claims under the FELA. *See* 45 U.S.C.A. § 56 (West 1986). In FELA cases tried in state courts, the applicable state rules generally govern procedural matters, while federal law controls as to all matters of substantive law. *Plunk v. Illinois Cent. R.R.*, No. 02A01-9707-CV-00167, 1998 WL 227772, at *3 (Tenn. App. May 8, 1998), *perm. app. denied* (Tenn. Oct. 19, 1998); *accord Duhon v.*

*Southern Pac. Transp. Co.*, No. 98-268, 1998 WL 690614, at \*\*2 (La. Ct. App. Oct. 7, 1998). The Tennessee Rules of Civil Procedure provide that summary judgment is appropriate only when the parties' "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.04. In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the trial court is required to consider the question in the same manner as a motion for directed verdict made at the close of the plaintiff's proof. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). That is, the trial court, and this court on appeal, "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11.

In accordance with Tennessee procedural law, the Railroad, as the party seeking summary judgment, had the initial burden of demonstrating that there were no disputed, material facts creating a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 215. One way the Railroad could meet this burden was by demonstrating that Jennings would be unable to prove an essential element of his FELA claim, inasmuch as the failure of proof on an essential element necessarily would render all other facts immaterial. *Horton v. Hughes*, 971 S.W.2d 957, 959 (Tenn. App. 1998); *see also Caledonia Leasing & Equip. Co. v. Armstrong, Allen, Braden, Goodman, McBride & Prewitt*, 865 S.W.2d 10, 13 (Tenn. App. 1992). Once the Railroad met its initial burden, the burden then shifted to Jennings to present evidence or to point to specific evidence in the record demonstrating the existence of a disputed material fact which needed to be resolved by the trier of fact. *Byrd v. Hall*, 847 S.W.2d at 215.

The dispute in the present case centers around whether the record contains more than a scintilla of evidence to support the third and fourth elements of Jennings' FELA claim, *i.e.* that the Railroad was negligent and that this negligence played some part in causing Jennings' injury. On appeal, Jennings contends that the record contains evidence that the Railroad had actual and/or constructive notice of the maul's tendency to break but did not take corrective action to prevent the injury to Jennings and, further, that the Railroad failed to provide Jennings with an alternative method, such as a hydraulic or pneumatic hammer, which was safer than using a maul to drive spikes

manually.  Specifically, Jennings' appeal focuses on the following evidence:  (1) the statement of Jennings' coworker that the mauls "had been left out in the weather in the back of company trucks unprotected from rain;" (2) the statements of Jennings and his coworker that similar mauls had broken in the past due to dry rot; (3) testimony by safety engineer Jack Larks that, "[b]ased on the age of the maul, the handle should have been periodically inspected, tested and/or replaced;" and (4) testimony by Jennings and Larks that other methods, such as hydraulic and pneumatic hammers, were available which would have enabled Jennings to drive spikes without using a maul.

We conclude that the foregoing testimony and affidavits fail to present more than a scintilla of evidence of the Railroad's negligence and, thus, that the trial court properly entered summary judgment in favor of the Railroad.  The affidavit of Jennings' coworker revealed that the mauls "had been left out in the weather in the back of company trucks unprotected from rain."  From this evidence, Jennings apparently asks us to draw the inference that the maul in question was exposed to the elements over a period of time and that this exposure caused the wooden handle of the maul to dry-rot.  The coworker's statement merely reveals, however, that on one occasion the mauls were left outside in the back of company trucks.  The coworker's affidavit fails to indicate the period of time over which the mauls were exposed to the elements or the number of occasions on which such exposure was permitted to occur.

Although a finder of fact properly may draw an inference from the direct and circumstantial evidence before it, it is well settled in Tennessee that an inference cannot properly be drawn from another inference. ***Benton v. Snyder***, 825 S.W.2d 409, 414 (Tenn. 1992).  Our supreme court has explained that

> [w]hat is meant by this rule is that "[a]n inference can be drawn only from the facts in evidence, and cannot be based on surmise, speculation, conjecture, or guess; it must be reasonably drawn from, and supported by, the facts on which it purports to rest, and must be made in accordance with correct and common modes of reasoning."

*Id*. (quoting ***Patton v. L.O. Brayton & Co.***, 201 S.W.2d 981, 984 (Tenn. 1947)).

In our view, the evidence that the mauls were exposed to the elements impermissibly

would require us to make an inference upon an inference. To support Jennings' theory of the case, this evidence would require the finder of fact to infer that exposure to the elements caused the wooden handle of the maul to dry-rot. The making of such an inference, in turn, would require the fact finder to make the initial inference that the maul was left outside for a sufficient period of time for such decay to occur. Such an inference would require speculation or conjecture as to the amount of exposure to which the maul had been subjected. Under these circumstances, we conclude that the record contains insufficient evidence to permit the finder of fact to make the ultimate inference sought to be drawn in this case.

We also conclude that the record contains insufficient evidence to permit the finder of fact to draw the inference that the Railroad was negligent in failing to periodically inspect, test, and/or replace the maul handle. The evidence indicated that similar mauls had broken in the past due to dry rot and that, based on the age of the maul's head, the maul's handle should have been periodically inspected, tested, and/or replaced.

It is true that a railroad's duty to provide a safe workplace includes the duty "to provide tools that are reasonably safe and suitable" for the employee's use. *Rodriguez v. Delray Connecting R.R.*, 473 F.2d 819, 821 (6th Cir. 1973). Other than the mere occurrence of Jennings' accident, however, the record contains no evidence that the Railroad failed to fulfill this duty. The record contains no evidence that the Railroad did not periodically inspect, test, and/or replace its maul handles. The only evidence on this issue suggests just the opposite because, by his own admission, Jennings was required to carefully inspect the handle of each maul prior to using it. Moreover, although the maul's head contained a date stamp of 1980, the record contains no evidence as to the age of the wooden handle on the maul that broke or, for that matter, on any other maul used by the Railroad. Thus, the evidence fails to indicate one way or the other whether the maul's handle ever had been replaced.

As for Jennings' argument that safer alternative methods were available for driving spikes, other courts have held that the use of spike mauls to drive spikes is not an inherently unsafe method and that a railroad has no duty to provide employees with an automated method of performing this task. In *McKennon v. CSX Transportation, Inc.*, 897 F. Supp. 1024 (M.D. Tenn.

1995), the court explained:

> The fact that there may have been an automated, or safer method, of work does not automatically render the chosen method unsafe or negligent for purposes of FELA. *Chicago R.I. & Pac. R.R. v. Lint*, 217 F.2d 279, 282-83 (8th Cir. 1954). Under FELA, the proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task. *Stillman v. Norfolk & W. Ry.*, 811 F.2d 834 (4th Cir. 1987). "That there are other, arguably more advanced, methods in use by the defendant for [accomplishing the task at hand] is of no significance where the method in use by [the plaintiff] was not an inherently unsafe one." *Soto v. Southern Pac. Transp.*, 644 F.2d 1147, 1148 (5th Cir. 1981), *cert. denied*, 454 U.S. 969, 102 S. Ct. 514, 70 L. Ed. 2d 386 (1981). Where "[t]he task at which [plaintiff] was injured was one that could be safely done by the method which he was told to use and was using," the employer is not negligent by refusing to provide plaintiff with an automated means for accomplishing his task. *Id*.

*McKennon*, 897 F. Supp. at 1027.

In *McKennon*, the plaintiff tore a ligament in his shoulder while using a maul to drive spikes. *McKennon*, 897 F. Supp. at 1026. The court granted the railroad's motion for summary judgment, ruling that the railroad was not negligent in failing to provide the plaintiff with a machine to drive the spikes. *Id*. at 1026-27. In so ruling, the court noted that the plaintiff had used the spike maul safely for twenty years prior to his injury and that the record contained no evidence that the maul in use was defective or that the spike maul was not a safe and appropriate way to drive spikes. *Id*. at 1027; *but cf*. *Rodriguez v. Delray Connecting R.R.*, 473 F.2d 819, 821 (6th Cir. 1973) (affirming jury verdict where plaintiff argued that old method of removing spikes with maul was unreasonable and that automatic spike puller was safer alternative).

In *Duhon v. Southern Pacific Transportation Co.*, No. 98-268, 1998 WL 690614, at **4 (La. Ct. App. Oct. 7, 1998), the plaintiff injured his lower back while swinging a spike maul. In a subsequent FELA action, the plaintiff argued that his employer should have provided an automated tool to perform the task of driving spikes. *Id*., at **1. Citing *McKennon*, the Louisiana Court of Appeal rejected this argument, noting that, under the FELA, the relevant inquiry was not whether the railroad could have employed a safer alternative method for performing the task of driving spikes, but whether the method employed was reasonably safe. *Id*., at **5. The court

concluded that using a maul to drive spikes was not inherently unsafe, pointing to evidence that the plaintiff had been using the maul throughout his career with the railroad, that he never before had been injured while using the maul, that the maul used was in good working order, and that the plaintiff himself was responsible for taking the maul out of service if he found that it was not in working order. *Id*., at **4-5.

In the present case, we similarly conclude that the record contains no evidence that the maul was an inherently unsafe method of driving spikes such as to impose upon the Railroad the duty to provide an automated method of performing the task. Jennings had used the maul throughout his twenty-five-year career with the Railroad. Although Jennings presented evidence that the wooden handles of other mauls had broken in the past due to dry rot, the record contains no evidence as to the frequency of these incidents. Moreover, the record contains no evidence that these breakages resulted in injury to anyone. In fact, the record is silent as to any injuries suffered by other Railroad employees while using the spike maul. In the absence of evidence that the use of the spike maul was an inherently unsafe method, we reject Jennings argument that the Railroad was negligent in failing to provide him with an automated tool to perform the same task.

The trial court's judgment is affirmed. Costs of this appeal are taxed to Jennings, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
TATUM, SR. J. (Concurs)