IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2010 Session

## LAURA JAN MELTON v. BNSF RAILWAY COMPANY

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005244-06 Div. V    Kay S. Robilio, Judge**

**No. W2009-00283-COA-R3-CV - Filed February 22, 2010**

This is an appeal from a jury verdict in favor of the Appellee in a case based on the Federal Employer's Liability Act, 45 U.S.C. § 51 *et seq*. Appellee filed this case as the widow and personal representative of her husband, who died as a result of injuries he sustained while working for the Appellant. Appellant appeals, arguing that the trial court erred in not granting it a directed verdict, in not granting its motion for new trial, in making several evidentiary rulings during the trial, and in not granting its motions for mistrial. We affirm the trial court's denial of the Appellant's motions for directed verdict, finding that the Appellee presented sufficient proof to create a question for the jury. However, finding that the trial court erred in allowing the Appellant's expert to be questioned on a non-testifying expert's deposition, and that the jury was more likely than not guided by prejudice, passion, and bias, we reverse the trial court's decision denying Appellant's motion for new trial. Further, finding material facts in dispute, we reverse in part and affirm in part the trial court's decision on Appellant's motion for summary judgment. Reversed in part, affirmed in part and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S. and DAVID R. FARMER, J., joined.

William C. Spencer, John G. Wheeler, William C. Spencer, Jr., Memphis, Tennessee and Wayne L. Robbins, Jr., Fort Worth, TX, for the appellant, BNSF Railway Company.

John A. Day, Laura W. Bishop, Brentwood, TN, Don R. Riddle, Houston, TX and Tom R.

Letbetter, George R. Payne, Houston TX, for the appellee, Laura Jan Melton.[1]

## OPINION

On July 11, 2006, Ronald Melton ("Mr. Melton") was struck by a rail car in the BNSF Tennessee Yard and died as a result of his injuries. At the time of his death, Mr. Melton was employed by Appellee, BNSF Railway Company("BNSF"), as a "carman." Mr. Melton and his co-worker, John Carnell ("Mr. Carnell") had been instructed to locate and repair a rail car with a bent pin lifter. The car needing repair was located on track 301, a protected track.[2] Mr. Melton and Mr. Carnell went to track 2051 (also referred to as Track 51)("Track 51") to look for the rail car needing repair. The parties dispute whether Pat Vaiden ("Mr. Vaiden), a Leadman for BNSF and Mr. Melton's supervisor, sent Mr. Melton and Mr. Carnell to Track 51 or Track 301.

Track 51 is a "bad order" track, where cars needing repair are sent. The rail cars on track 51 are "humped" onto the track–that is they are moved down an incline onto track 51, passing through "retarders," which reduce the speed, and then roll freely until they are stopped by the force of gravity or until they come into contact with another car. The section of track 51 at issue is located in an area of the yard that is sloped on either side and referred to as the "bowl."

Mr. Melton drove a BNSF road truck to locate the rail car needing repair. He parked the road truck between track 301 and track 51 with the rear of the road truck facing south. Two cars were coupled[3] together on track 51, rail car AOK-181556 ("AOK") and rail car FURX-824206 ("FURX"), adjacent to where Mr. Melton parked the road truck. There were several other rail cars north of these two coupled rail cars. Upon exiting the road car, Mr. Melton told Mr. Carnell to be careful as track 51 was a "live" track. Mr. Melton and Mr. Carnell then walked in a northerly direction up track 51, looking for the rail car needing repair. When they could not find it, they decided to return to their truck to call Mr. Vaiden for more information. Upon reaching the truck, Mr. Melton went towards the driver's side and Mr. Carnell went towards the passenger side. After the two parted, Mr. Carnell saw a

---

[1]Attorneys John A. Day and Laura Bishop did not participate in the trial of this case for the appellee, but first appear in the record on Appellee's Response to Appellant's Rule 50.02, 52.02, and 59.02 Motion, and were the attorneys who appeared at oral argument. Attorneys Don R. Riddle, Tom R. Letbetter, and George R. Payne were the attorneys of record for the appellee during the trial proceedings and also participated in this appeal.

[2]A protected track is one that has been blocked so that cars will not be moving on it.

[3]Coupled refers to when two rail cars are connected together.

rail car approaching from the south on track 51 and yelled to warn Mr. Melton. The car Mr. Carnell saw was CEFX-30498("CEFX"), which had been humped onto track 51. CEFX collided with FURX causing FURX and AOK to move forward. AOK struck Mr. Melton, causing his injuries. The parties dispute where exactly Mr. Melton was in relation to his road truck and the track when he was struck.

Mr. Melton's wife, Laura Jan Melton ("Mrs. Melton"), Appellee, filed this suit against BNSF on October 9, 2006, based on the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* BNSF answered the complaint on November 14, 2006, denying that it was negligent and raising as a defense the contributory negligence of Mr. Melton. Mrs. Melton subsequently, with leave of the court, amended her complaint, and BNSF filed an amended answer, raising preemption as an additional defense. Again with permission of the court, Mrs. Melton filed a second amended complaint adding the allegation that BNSF violated the Code of Federal Regulations, 49 Part 213.37 on vegetation. BNSF filed a second amended answer denying such violation.

On January 17, 2008, BNSF filed a Motion for Summary Judgment contending that there were no disputed material facts and that Mrs. Melton's claims were preempted. On February 21, 2008 the trial court heard argument on BNSF's Motion for Summary Judgment.[4] The trial court entered an order on March 6, 2008, granting BNSF's motion on the issues of vegetation and ballast[5] and denying the motion as to all other issues.

An approximately two and a half week jury trial was held in September 2008. The jury returned a verdict finding BNSF negligent and Mr. Melton not negligent. The jury awarded one million dollars in pecuniary damages and four million dollars in damages for Mr. Melton's conscious pain, suffering, and mental anguish. A final judgment was entered on October 9, 2008, reflecting this decision.

BNSF filed a motion pursuant to Tennessee Rule of Civil Procedure 50.02, 52.02 and 59.02, asking the trial court to set aside the verdict and the judgment entered, and to enter judgment in accordance with BNSF's previous motions for summary judgment and directed verdict. BNSF argued that the trial court had erred in not granting summary judgment as "discovery had revealed no factual basis to support any of plaintiff's thirty one separate claims," and that the plaintiff's claims were preempted. BNSF further argued that the trial

---

[4]BNSF's Motion for Summary Judgment was heard and decided by Judge Bailey. It appears from the record that the case was subsequently transferred to Judge Robilio. Although the parties in their briefs reference a previous mistrial, the record does not indicate a reason for the transfer.

[5]Ballast refers to the rocks and gravel in and around the tracks.

court had erred in not granting it a directed verdict at the close of Mrs. Melton's proof and again when BNSF renewed it's motion at the close of all proof, as Mrs. Melton has failed to present any evidence in support of her claims. Also, BNSF requested that the trial court, pursuant to Tennessee Rule of Civil Procedure 52.02, amend the judgment to reflect Mr. Melton's own negligence and to reflect a "more appropriate award of damages." BNSF also requested a new trial, contending that the verdict was excessive; the verdict indicated "passion, prejudice or caprice on the part of the jury"; the verdict was against the clear weight of the evidence; that the trial court made numerous other errors in ruling on certain questions asked and comments made by Mrs. Melton's counsel and other evidentiary issues; and that the trial court erred in denying BNSF's multiple motions for mistrial. In the alternative, BNSF asked for a remittitur.

The trial court held a hearing on BNSF's motion on December 4, 2008. Prior to hearing oral arguments the trial court stated that it was denying BNSF's motion for a new trial or to set aside the jury verdict. The trial judge went on to explain her decision. The trial court stated that the jury must not have believed the railroad's witnesses and that the jurors probably believed that Mr. Vaiden had given Mr. Melton the understanding that he was going to "make the phone call to alert the powers that be, that Mr. Melton was going to be in that area." The trial court went on to state, "[t]he Court having that rationale that the jurors most likely felt there was a cover up by the railroad that there was some cover up by the railroad, their processing of that information." The trial court then allowed the parties to argue on the issue of remittitur. Prior to arguing, counsel for BNSF asked for clarification that the trial court was denying its motion for the reasons stated in the record, and the trial court stated, "Right, there was a cover up by the railroad." The parties then proceeded to argue on remittitur. The trial court then granted BNSF a remittitur reducing the award of damages for pain and suffering by one million dollars, making a total award of three million dollars for pain and suffering and reducing the total award from five million dollars to four million dollars. An order was entered reflecting the trial court's denial of BNSF's motion and the grant of remittitur on January 9, 2009. Mrs. Melton filed a Notice of Acceptance of Remittitur Under Protest on January 12, 2009. The trial court entered an amended final judgment reflecting the remittitur on January 16, 2009. BNSF timely filed an appeal on January 30, 2009.

On appeal BNSF raises the following issues as we restate them:

1.    Whether the trial court erred in denying BNSF's motions for directed verdict and motion for judgment in accordance with the motion for directed verdict?

2.    Whether the trial court erred in denying the defendant's motion for new trial?

-4-

3.      Whether the trial court erred in the admission of evidence, warranting a new trial?

4.      Whether the trial court erred in refusing to declare a mistrial?

Mrs. Melton raises one issue for our review:

1.      Whether the trial court erred in granting BNSF summary judgment on the issues of vegetation and ballast?[6]

## Motion for Directed Verdict

BNSF first contends that the trial court erred when it denied BNSF's motion for directed verdict at the close of Mrs. Melton's evidence and then when BNSF renewed its motion at the close of all the evidence. The United States Supreme Court has consistently applied the federal standard in reviewing whether a directed verdict should be granted in a FELA case tried in state court. *Blackburn v. CSX Transp., Inc.*, No. M2006-01352-COA-R10-CV, 2008 Tenn. App. LEXIS 336, \*27 (Tenn. Ct. App. 2008)(relying on *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500 (1957); *Lavender v. Kurn*, 327 U.S. 645 (1946); and *Brady v. Southern Ry. Co.*, 320 U.S. 476 (1943)). In determining whether to grant a directed verdict, the trial court must determine "whether, with reason, the conclusion may be drawn that the negligence of the employer played any part at all in the injury" of the employee. *Rogers,* 352 U.S. at 507. Only "where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury," may the trial court enter a directed verdict. *Id.* at 510.

In reviewing the trial court's decision not to grant a directed verdict, we use the same standard the trial judge was required to use, and must determine whether sufficient evidence was presented to raise a material issue of fact. *White v. Burlington Northern Santa Fe Ry. Co.*, 364 F.3d 789, 794 (6th Cir. 2004). In making this determination, we must draw all reasonable inferences in favor of the nonmoving party. *Id.* We are not to make any credibility determinations or weigh the evidence, and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

When making a claim under FELA, a plaintiff must prove the traditional common-law elements of negligence: duty, breach, forseeability, and causation. *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990). BNSF has a duty to provide its employees with a

---

[6] As required by Tenn. R. App. P. 3, all issues raised on appeal were first raised in the motion for new trial.

reasonably safe workplace under FELA. *Id.* As previously stated by this court:

> This does not mean that the railroad has the duty to eliminate all workplace dangers, but it does have the "duty of exercising reasonable care to that end." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 269 (6th Cir. 2007) *cert. denied*, - - U.S. - -, 129 S.Ct. 489, 172 L.Ed.2d 356 (2008)(citing *Baltimore & Ohio S.W.R. Co. V. Carroll,* 280 U.S. 491, 496, 50 S.Ct. 182, 74 L.Ed 566 (1930)). "A railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe." *Id.* (citing *Tiller v. Atl. C.L.R. Co.*, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610 (1943); *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 811 (6th Cir. 1990). In other words, "a railroad breaches its duty when it knew, or by the exercise of due care should have known that prevalent standards of conduct were inadequate to protect the plaintiff and similarly situated employees." *Id.* at 269-70 (internal quotations omitted).

*Jordan v. Burlington Northern Santa Fe Ry. Co.*, No. W2007-00436-COA-R3-CV, 2009 WL 112561, *8 (Tenn. Ct. App. 2009).

We have reviewed the record in this case and find that the trial court did not err in refusing to grant BNSF a directed verdict either at the close of Mrs. Melton's evidence or at the close of all the evidence. In support of her case, Mrs. Melton offered the testimony of Mr. Carnell, that track 51 and 301 were an arm's distance apart, that he and Mr. Melton were not foul of the track[7], and that in his opinion cars should not be humped onto track 51 when the men are working in the bowl. Mr. Carnell also testified that he thought he heard Mr. Vaiden send them to track 51. Mrs. Melton also presented proof that the supervisor was the one required to call the yardmaster to block out the tracks where men were working and Mr. Vaiden, the supervisor, admitted having not called the yardmaster himself. Further, Mrs. Melton presented evidence that the General Code of Operating Rules required that all unattended cars be secured. The jury heard evidence that the AOK was neither coupled to another car, nor had a brake applied to it. Additionally, there was testimony that some employees believed in a general rule that it was safe as long as the employee was clear of the

---

[7]The definition of "foul of the track" is disputed by the parties, but refers to the distance from the track one must be in order to be safe and clear from moving rail cars. BNSF asserts that foul of the track is four feet from the rails.

rails. Mrs. Melton further elicited testimony that BNSF had a company initiative that cars were not to couple at a speed faster than four miles per hour. Also, the jury heard testimony from a BNSF employee that there had been maintenance issues with the retarders, the devices used to slow the rail cars, on track 51. While BNSF presented its own evidence attempting to rebut this and other evidence of negligence, it is not our duty nor the trial court's duty to weigh the evidence or make decisions regarding the credibility of the evidence. Drawing all reasonable inferences in favor of Mrs. Melton and disregarding all evidence favorable to BNSF that the jury was not required to believe, we find that she presented sufficient evidence to raise a question for the jury. Accordingly, we affirm the decision of the trial court denying BNSF's motion for directed verdict and its renewed motion.

## Motion for New Trial

BNSF next submits that the trial court erred in denying its Motion for a New Trial. As previously held by this Court, we are to apply the federal standard to determine whether to grant a new trial in a FELA case. *Blackburn v. CSX Transp., Inc.,* No. M2006-01352-COA-R10-CV, 2008 Tenn. App. LEXIS 336, *29 (Tenn. Ct. App. 2008). Under the federal standard, the trial court "'has the power and duty to order a new trial whenever, in its judgment, this action is required to prevent an injustice.'" *Id.* at *13 (quoting 11 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2805 (1995)). "Common grounds for granting a new trial include the verdict is against the clear weight of the evidence, a prejudicial error of law, or misconduct affecting the jury." *Id.* We review the trial court's decisions on motions for new trial on an abuse of discretion standard. *Id.* at *46; *see also Toth v. Yoder*, 993 F.2d 528, 1197 (6th Cir. 1984). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, (6th Cir. 1989).

### *Evidentiary Rulings*

BNSF's contends that it was prejudiced by the erroneous admission of evidence and that it is, therefore, entitled to a new trial. Decisions regarding the admissibility of evidence rest within the sound discretion of the trial court. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992) Accordingly, we review the trial court's decision under an abuse of discretion standard. *State Dep't of Transp. v. Veglio*, 786 S.W.2d 944, 948 (Tenn. Ct. App. 1989). The abuse of discretion standard requires us to consider "(1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). "While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not

substitute our judgment for that of the trial court merely because we might have chosen another alternative." *Id.* If this Court finds error, we will only set aside the final judgement upon a finding that the error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

BNSF submits that it was prejudiced when the trial court allowed Mrs. Melton's counsel to read from and refer to the deposition of Foster Peterson ("Peterson") during cross examination of BNSF's expert, Dr. Elaine Serina ("Dr. Serina"). Peterson was an expert hired by BNSF after the accident to do an investigation. He did not testify at trial and his deposition[8] was not introduced into evidence. BNSF argues that questioning Dr. Serina on Peterson's deposition was improper as Dr. Serina did not rely on the deposition to form her opinion in this case.

In response, Mrs. Melton citing *Steele v. Ft. Sanders Anesthesia Group P.C.*, 897 S.W.2d 270 (Tenn. Ct. App. 1994), argues that an expert may be questioned about any information and data reviewed by that expert. In *Steele*, the testifying expert "acknowledged that he ha[d] read and considered [the non-testifying expert's] discovery deposition when forming his opinion. He testified that he read and considered [the] deposition, but did not rely on it. He stated he rejected [it]." *Id.* at 275. This Court held that cross examination of the expert on the non-testifying expert's deposition was proper because the expert had to rely on the deposition at issue for the "facts and data upon which he based his opinion." *Id.* As this court stated, "[w]e are of the opinion that full cross examination of an expert can not and should not be curtailed simply by having the expert deny that he relied on any materials he reviewed and considered with which he disagrees." *Id.* at 277.

At trial, Dr. Serina testified as to her conclusion on the cause of Mr. Melton's injuries. She concluded, using the shape and measurements of the wheel of the rail car along with the rail, Mr. Melton's body dimensions, and Mr. Melton's injuries, that he was run over by the rail car. Dr. Serina testified that the imprint found on the shoulder of Mr. Melton matches the width of the rail. She explained that the flange of the wheel would explain the cut on his armpit large enough to see muscle coming out, and the fracture to the thighbone. In response to a question about amputation, Dr. Serina explained that the skin would stretch around the flange of the wheel, but the flange would cut through bone and muscle. This, she explained is why there was not a complete amputation, but as Mr. Melton's injuries reflect, stretching of the skin and near amputation as the bone and muscle was cut. Further, Dr. Serina testified

---

[8]It is not clear from the record whether Peterson's deposition was an evidentiary deposition or a discovery deposition.

that the abrasions on his chest and torso were caused by the sideframes of the rail car moving over Mr. Melton. She testified that Mr. Melton would not have these injuries if he had not been on the rail. Dr. Serina further explained that it was not her job to determine where Mr. Melton was in relation to the AOK car, nor the speed of the rail cars.

Peterson testified in his deposition about an investigation he conducted after the accident, at the instruction of BNSF's attorney. Peterson's testimony apparently included his conclusion as to the speed at which he believed the rail cars were moving, his conclusion as to how far Mr. Melton was from the AOK car prior to it moving, and his measurements of Mr. Melton's road truck.

Upon review of the record, we find **Steele** distinguishable from the case before us for several reasons. First, there is no indication in the record that Dr. Serina considered Peterson's deposition for purposes of her opinion. Dr. Serina did testify that she read the Peterson deposition along with other material provided to her in order to understand what happened in the case. However, unlike in **Steele,** Dr. Serina did not rely on the deposition for the facts and data she used in forming her opinion as to how Mr. Melton was injured. Mrs. Melton's counsel actually asked Dr. Serina, "Isn't it true, Dr. Serina, that you had to rely upon the basic investigative facts that Foster Peterson provided, because you did not have any of your own?" Dr. Serina responded that she reviewed it, but did not rely on it for her opinion, indicating that her knowledge of the facts in the deposition was not necessary for her to form her opinion. As Dr. Serina stated, her opinions were based on the injuries to Mr. Melton, the geometry of the rail car and the body dimensions of Mr. Melton. In fact, Dr. Serina testified that she did not even receive the deposition at issue until after she wrote her report.

Tennessee Rule of Evidence 705 provides that an expert may be required to disclose the underlying facts or data of her opinion on cross examination.[9] In **Steele,** this Court was faced with an expert who admitted reading and considering a deposition to obtain the facts and data upon which his opinion was based. The **Steele** expert denied relying on the deposition, contending that he rejected it. That is not the situation we have before us. While

---

[9]Tenn. R. Evid. 705 reads:

> The expert may testify in terms of opinion or inference and give reasons without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross examination.

we do not want to create a situation where an expert may simply deny that he relied on material provided to him in forming his opinion in order to curtail cross-examination, there must be some indication that the material upon which cross-examination is sought provides, at least in part, the underlying facts and data upon which the expert's opinion is based. In this case, there is simply no indication that any material from the Peterson deposition, while read, underlies Dr. Serina's opinion. Therefore, we find that cross examination based on the Peterson deposition was improper.

Assuming, *arguendo* that cross examination based on the Peterson deposition was proper because Dr. Serina read the deposition, this Court still finds the situation distinguishable from *Steele* and finds the cross examination improper. In *Steele,* the plaintiff's counsel was attempting to use the deposition to impeach the testifying expert. *Steele*, 897 S.W.2d at 278. In this case it appears abundantly clear that Mrs. Melton's counsel was not attempting to impeach Dr. Serina with the Peterson deposition, but instead was attempting to utilize Dr. Serina to present the Peterson deposition testimony to the jury. Mrs. Melton's counsel asked Dr. Serina about the speed of the rail car at issue and how long Mr. Melton would have to react if the AOK car was moving at eight miles per hour. Prior to this, the only evidence of the speed of the AOK car was the testimony of Ryan Schoener that the CEFX car, the rail car initially humped onto track 51, was going 10.7 miles per hour as measured at a switch an undetermined distance from the accident. When BNSF objected to this question, counsel for Mrs. Melton explained that Peterson had testified that the rail car was moving at eight miles per hour. The trial court overruled the objection and after another objection concerning whether Dr. Serina relied on the Peterson deposition, cross examination continued. Counsel for Mrs. Melton then read to Dr. Serina Peterson's deposition where he testified that the rail car was moving at eight miles per hour and counsel commented that Peterson had testified that the AOK car would be going at essentially the same speed.[10] However, the speed of the car and the amount of time Mr. Melton had to react had nothing to do with Dr. Serina's opinion that Mr. Melton's injuries were caused by being run over by a rail car and any such questions were completely irrelevant. Dr. Serina testified that she did not have an opinion as to speed. Because this line of questioning was not impeachment and because the Peterson deposition had not been entered into evidence, this line of questioning was improper.

Finally, this situation is also distinguishable from *Steele* as the *Steele* court found the cross-examination at issue to be immaterial. *Id.* at 278. The *Steele* court explained that the

---

[10]We note that BNSF's brief indicates that the deposition testimony was put on a screen and shown to the jury. The record, however, does not indicate this.

questioning at issue was only heard for a short period of time during a two and a half week trial, was only used for impeachment after a strong cautionary instruction was given to the jury, was cumulative to direct evidence in the record, and it was not referenced during closing arguments. The case before this Court presents a starkly different situation. The cross examination based on the Peterson deposition, including the attorneys' objections, spans the majority of approximately one hundred pages of transcript. The questioning was not used for impeachment, but rather as a means to place before the jury Peterson's estimate of how far Mr. Melton was from the AOK car, the speed of the rail cars and the measurements of the road truck taken by Peterson. None of these matters were related to the opinion and testimony of Dr. Serina. There was no instruction given to the jury concerning the use of Peterson's deposition. Additionally, counsel for Mrs. Melton told the jury in closing arguments, "you folks can figure out how far does that AOK car move in a second if its going eight miles an hour," even though the only evidence that the car was moving at eight miles an hour came from Peterson's deposition. Accordingly, we can not find that the use of Peterson's deposition by Mrs. Melton's counsel to cross examine Dr. Serina was immaterial.

This court has previously held that, when an expert bases her opinion on inadmissible facts, the trial court should either prohibit the jury from hearing the testimony or deliver a cautionary instruction that the jury is not to use the information as substantive evidence. *Benson v. Tenn. Valley Electric Co-Op*, 868 S.W.2d 630, 641 (Tenn. Ct. App. 1993). Peterson's deposition was not entered into evidence and appears to be inadmissible hearsay. A deposition is often admissible as an exception to the hearsay rule. *See* Tenn. R. Evid. 804. However, there is no indication or argument in the record that Peterson was unavailable as defined by our rules of evidence. Here the trial court repeatedly allowed questioning on Peterson's deposition, which included reading the deposition to the jury and summarizing what Peterson testified to, but did not deliver a cautionary instruction to the jury regarding its use of Peterson's deposition. In fact, the trial court did eventually find the deposition to be hearsay, but not until after numerous questions had been asked and answered, and objections made. Consequently, we find that the trial court erred in allowing Mrs. Melton's counsel to use, comment on, and read from Peterson's deposition when cross examining Dr. Serina.

As stated above, we will not set aside a final judgment unless the error "more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). We are mindful of the respect to be given to a jury verdict and are hesitant to set the verdict of the jury aside. However, upon reviewing the record, we find that due to the pervasiveness of this line of questioning in the record, the fact that counsel referred to the estimate of eight miles an hour in his closing argument, the fact that the theory that the

rail car was moving at eight miles an hour does not appear anywhere else in evidence, the lack of a cautionary instruction to the jury, and because Mrs. Melton's claim was based in part on the allegation that BNSF was negligent with regard to the speed of the rail car, we find that the error "more probably than not affected the judgment or would result in prejudice to the judicial process." Consequently, we find that the trial court erred in not granting a new trial based on the evidentiary errors.

*Prejudice*

BNSF further submits that it is entitled to a new trial because the jury was guided by "bias, passion, and prejudice." BNSF contends that the jury was prejudiced by Mrs. Melton's counsel's continued questions and comments on inadmissible evidence, prior accidents, BNSF's post-accident investigation which the trial court held to be protected work product, and suggestions of concealment and cover-up by BNSF. "Misconduct by an attorney that results in prejudice may serve as a basis for new trial. The burden of showing prejudice rests with the party seeking the new trial, and [the trial courts] have broad discretion in deciding whether to grant a motion for new trial." *Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 819 (6th Cir. 2007)(citations omitted). To be entitled to a new trial on the basis that the trial was unfair, the moving party must show that the jury was influenced by prejudice or bias. *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045 (6th Cir. 1996). This Court must "determine 'whether there is a reasonable probability that the verdict of the jury has been influenced by improper conduct.'" *Maday*, 480 F.3d at 819 (citations omitted). The reviewing court must consider the totality of the circumstances, considering the number of comments, the nature of the comments, possible relevance to the issues, and the manner in which the parties and the court treated the comments. *Id.*

Upon review of the record, we find numerous instances where Mrs. Melton's counsel referred to inadmissible evidence and BNSF's post-accident investigation, and inferred that BNSF was concealing evidence. In his opening statement for Mrs. Melton, her counsel told the jury that BNSF had hired an expert that the jury would likely not hear from, and that counsel had subpoenaed some evidence from BNSF, which had not been provided. Upon objection by BNSF, the court admonished counsel and warned that too many more mistakes would result in a mistrial. In questioning Charles Trailor[11] ("Mr. Trailor"), head claims agent for BNSF, counsel referenced interrogatories requesting statements and then asked if Mr. Trailor was aware they had only received some statements the day before. Mr. Trailor was also asked about the number of times Everett Gibson, an attorney for BNSF, had been hired to defend BNSF and the number of times BNSF had hired Peterson to investigate accidents,

---

[11]We note that Mr. Trailor is referred to as Troy Traylor in BNSF's brief. We conclude Troy and Charles are the same person despite the differences in spelling of the last name because Mr. Trailor stated his name on the record as Charles Troy Trailor.

despite the trial court's previous ruling that the post-accident investigation was not admissible. BNSF objected and the court sustained the objection. The parties then entered into a stipulation that there had been an investigation after the accident by BNSF. When questioning Grady Carr("Mr. Carr"), yardmaster for BNSF, Mrs. Melton's counsel asked Mr. Carr if Mrs. Melton's counsel had been "secluded and prevented from talking with [him]." BNSF objected and the Court admonished counsel for Mrs. Melton. Then, when questioning Roy Logan("Mr. Logan"), a BNSF car inspector, Mrs. Melton's counsel referenced a prior accident Mr. Logan had and a claim he made against BNSF. Counsel then asked Mr. Logan if BNSF ever took an inconsistent position with the rule that foul of the track was four feet of the rails. BNSF objected and, in sustaining the objection, the trial court stated that, had Mr. Logan answered, it would have been a mistrial. When Ryan Schoener("Mr. Schoener"), an employee of BNSF, testified that the speed limit on the track was twenty miles per hour, Mrs. Melton's counsel challenged Mr. Schoener to produce the timetables from the stand. BNSF objected. The trial court sustained the objection, noting that discovery disputes were not to be placed before the jury, but also noting that BNSF probably should have provided the timetables. In examination of Andrew Corbet, a signal maintainer for BNSF, Mrs. Melton's counsel referenced a letter from BNSF's counsel sent during discovery, discussing missing attachments. Before making this reference during examination, Mrs. Melton's counsel had asked the court if he could inform the jury as to where he had obtained the exhibit so that the jury would be aware that some parts were not provided. The trial court denied this request, explaining to counsel that discovery disputes needed to have been brought to the court prior to trial and not litigated in front of the jury. These are only some of the specific objections to improper questions and comments. The cumulative effect of these and other occurrences in the record indicate that the jury may have been guided by bias, prejudice, or passion.

Further and more importantly, as this Court has previously stated, "[i]n deciding a motion for new trial, the . . . judge is not bound to give any reasons, any more than the jury itself is bound to do so." ***Bellamny v. Cracker Barrel Old Country Store***, No. M2008-00294-COA-R3-CV, 2008 WL 5424015 at *3 (Tenn. Ct. App. 2008)(rev'd on other grounds)(citations omitted). If the trial judge makes no comments, we must assume that the trial judge properly performed her role. ***Id.*** For these reasons, we suggest, as we have previously, that "when a trial judge overrules a motion for new trial,...[she] simply state that [she] has reviewed the evidence relevant to the issues and approves the verdict. Anything more unnecessarily runs the risk of an unwanted new trial." ***Id.*** In the unfortunate circumstance that the trial judge fails to follow our advice, and makes comments concerning the ruling on a motion for new trial, this Court is forced to consider those comments and determine whether the trial judge was satisfied with the verdict. ***Id.*** "If it appears from any reasons assigned or statements made in passing on a motion for new trial that the judge was

not actually satisfied with the verdict, it is the duty of the appellate courts to grant a new trial...." *Id.*(citations omitted).

In this case, the trial judge denied the motion for new trial and then proceeded to explain why she was denying the motion. The trial judge first explained her rationale, "that the jurors most likely felt there was a cover up by the railroad that there was some cover up by the railroad, their processing of that information," without questions or comments from counsel. When asked for clarification for the record, the following occurred:

> Mr. Wheeler (counsel for BNSF): Just so the record is clear we've been ready to argue all of the motions before the Court. We understand and accept the Court's rulings. As I understand the Court has ruled on our Rule 50 Motion for A Judgment Notwithstanding A Verdict?
>
> The Court: That's exactly right.
>
> Mr. Wheeler: And has ruled on the Rule 59 Motion for A New Trial.
>
> The Court: That's right, denying those motions.
>
> Mr. Wheeler: On the basis that the Court has given in the record[] today?
>
> The Court: Right, there was a cover up by the railroad.

It appears to this Court from the comments by the trial judge, that the trial judge firmly believed that the jury's verdict was based on its belief that BNSF was involved in a conspiracy and coverup to hide the truth. In reviewing the trial court's decision, this Court must consider her comments. Because of her belief that the jury's verdict was based on a conspiracy or coverup by BNSF, the trial judge should not have been satisfied with the verdict and should have granted a new trial. The theory that questions and comments by Mrs. Melton's counsel suggested that BNSF conspired to coverup the truth or hide evidence was a basis for BNSF's motion for new trial and subsequent appeal. The trial court apparently agreed, yet denied the motion for new trial. After reviewing the record, we find that the numerous questions and comments by counsel for Mrs. Melton referring to hidden evidence; an investigation by BNSF, which the trial court had already ruled inadmissible as work product; and other suggestions of coverup and concealment by BNSF, support the trial court's belief. In considering the totality of the circumstances, we find that there were numerous inappropriate questions and comments by counsel for Mrs. Melton, and that these

-14-

questions continued despite objections from BNSF and in some instances after the trial court sustained the objections and warned counsel. Also, we find that there were few curative instructions to the jury. Finally, we find that the questions and comments regarding hidden evidence and an investigation by BNSF had absolutely no relevance to the issues before the jury, and the trial judge found that the jury believed BNSF had conspired and attempted to coverup. Consequently, we find there is a reasonable probability the verdict was influenced by improper questions and comments, and that the trial court abused her discretion in not granting a new trial after finding that the jury's verdict was based on its belief that BNSF was involved in a conspiracy and coverup. Accordingly, BNSF is entitled to a new trial.[12]

## Summary Judgment

Both parties submit that the trial court erred in ruling on the BNSF's Motion for Summary Judgment. Mrs. Melton argues that the trial court erred in granting BNSF summary judgment on the issues of vegetation and ballast. BNSF argues that the trial court erred in not granting it summary judgment on the remaining issues. In determining whether a party in an FELA case is entitled to summary judgment Tennessee Rule of Civil Procedure 56 applies. *Mills v. CSX Transportation*, - - S.W.3d - -, No. E2006-01933-SC-R11-CV, 2009 WL 4547685 (Tenn. 2009).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co*., 270 S.W.3d 1, 8-9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the

---

[12] We further note that when ruling on the motion for new trial, the trial court also made comments on the evidence that, after reviewing the record, we find to be incorrect. The trial court stated that there was evidence that Mr. Vaiden had told Mr. Melton that he would alert "the powers that be" that Mr. Melton and Mr. Carnell would be working on track 51. While evidence was presented and argument was made, that Mr. Vaiden had a duty to notify the yardmaster that Mr. Melton was working on track 51, Mr. Vaiden unequivocally testified that he did not notify the yardmaster and never testified that he told Mr. Melton he had. Further, the trial court stated that the evidence showed that Mr. Vaiden was an EMS and did nothing to help Mr. Melton. We find that the evidence does not show that Mr. Vaiden was an EMS, but that Mr. Vaiden had CPR training and that he testified that Mr. Melton was conscious and breathing, and therefore not in need of CPR.

moving party's motion is properly supported, "The burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5(citing *Byrd v. Hall*, 847 S.W.2d 208, 215(Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Martin v. Norfolk Southern Railway. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)(citations omitted).

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." *Mathews Partners, LLC v. Lemme,* No. M2008-01036-COA-R3-CV, 2009 WL 3172134 at *3 (citing *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977)).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision to grant summary judgment, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134 at *3(citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id.*

*Vegetation and Ballast Claims*

Mrs. Melton submits on appeal that the trial court erred in granting BNSF summary judgment on the issue of vegetation and ballast as there were material issues of fact in dispute. In response, BNSF contends that the trial court correctly found that "submission of said claims to a jury would not be probative." BNSF claims that the basis for its motion was that the claims of improper vegetation and ballast were preempted, and that the plaintiff did not present any proof that the vegetation and ballast played any role in the accident.

To be entitled to summary judgment, BNSF must either: (1) affirmatively negate an essential element of the non-moving party's claim; or (2) show that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co***., 270 S.W.3d 1, 8-9 (Tenn. 2008). It is not enough for BNSF to challenge Mrs. Melton to a "put up or shut up," by claiming she will not be able to prove her claim. ***Id***. at 8. However, that appears to be what BNSF attempted to do and the reason the trial court granted its motion. As stated by BNSF in its statement of undisputed facts, "Plaintiff has presented no evidence or other proof that the accident was proximately caused by any negligence of BNSF." In its memorandum in support of its motion, BNSF states, "the plaintiff has produced no documentation, testimony or other credible proof which demonstrates BNSF is liable to her for any damages whatsoever." In no way did BNSF affirmatively negate an element of Mrs. Melton's claim or come forward with its own evidence demonstrating that Mrs. Melton would not be able to prove an element of her claim

Because BNSF did not make the proper showing, the burden to demonstrate a material issue of fact never shifted to Mrs. Melton. Despite the fact that the burden did not shift, Mrs. Melton did come forward with evidence indicating that there were material issues of fact in dispute. Specifically, Mrs. Melton provided the trial court with depositions which indicate that there were material issues of fact in dispute. Jason Dowdy, a roadmaster for BNSF, testified that, if track inspectors had seen the vegetation as it existed at the time of the accident, they should have taken the track out of service as the vegetation was outside the crossties. Carl Kinder, a BNSF employee, testified in his deposition that on the day of the accident he observed weeds thirteen or fourteen inches tall along track 51. Roy Logan("Mr. Logan"), a carman for BNSF, testified that he had seen and reported weeds in the area of the accident, and that he reported them because the vegetation would cause problems for employees walking. Mr. Logan further testified that in his opinion, BNSF would be negligent if it did not address the vegetation. Mr. Logan also testified that he had seen big rocks in the area which could create a tripping hazard, and he had reported this to BNSF. Richard Renner("Mr. Renner"), a BNSF employee, also testified that federal regulations required the vegetation be controlled, that BNSF required employees to report vegetation issues, and that if BNSF inspectors had seen the vegetation depicted in photographs the track should have been taken out of service. Mr. Renner further testified that improper ballast was a tripping hazard, and that BNSF required ballast in the yard to be between one-half inch and one inch. Mr. Schoner, a terminal manager for BNSF, testified that weeds or grass could be a stumbling hazard. Daniel Tucker, a BNSF maintenance employee testified that the weeds in the picture he was provided, were not in proper condition and showed ballast as large as two inches. William Dunavant, a leadman for BNSF, testified that ballast of unequal size could make you feel like you were walking on marbles. Accordingly, this Court finds that, while BNSF never shifted the burden to Mrs. Melton requiring her to present proof of

disputed facts, the record shows that there are material issues of fact in dispute which make the grant of summary judgment to BNSF on the issues of vegetation and ballast improper.

However, this does not end the required analysis as BNSF claims that the vegetation and ballast claims are preempted. The Sixth Circuit Court of Appeals has recently held that, "the uniformity demanded by the [Federal Railway Safety Act, 49 U.S.C. § 20101, *et seq.* ("FRSA")] can be achieved only if federal rail safety regulations are applied similarly to a FELA plaintiff's negligence claim....'" ***Nickels v. Grand Truck Western R.R., Inc.***, 560 F.3d 426, 430 (6th 2009)(citing ***Lane v. R.A. Sims, Jr., Inc.***, 241 F.3d 439, 443 (5th Cir. 2001); and ***Waymire v. Norfolk & W. Ry. Co.***, 218 F.3d 773, 776 (7th Cir. 2000)). Thus, if there is a federal regulation prescribed under FRSA, plaintiff's claims are preempted. As noted by the ***Nickels*** court, the Secretary of Transportation has promulgated a regulation on ballast and, therefore, negligence claims based on ballast may be preempted. ***Id.*** (citing 49 C.F.R. § 213.103). Similarly, there is also a regulation under FRSA on vegetation and claims based on vegetation consequently, may also be preempted. *See* 49 C.F.R. § 213.37.

However, to be preempted the railroad must be in compliance with the federal regulations. ***Micheal v. Norfolk Southern Ry. Co.,*** 74 F.3d 271, 273 (11th Cir. 1996). If the railroad is not in compliance, then the claim is not preempted. ***Id.*** While preemption is a question of law, ***Niles***, 560 F.3d at 429, whether the railroad was complying with the federal regulation at issue is a question of fact. ***Id.*** For purposes of summary judgment, BNSF has not affirmatively shown that it was in compliance with the federal regulations. Therefore, BNSF is not entitled to summary judgment on the issues of vegetation and ballast based on BNSF's defense of preemption. Consequently, we find that the trial court erred when it granted BNSF summary judgment on the issues of vegetation and ballast.

*Speed*

BNSF submits that the trial court erred in not granting it summary judgment on the issue of speed as the claim is preempted because speed is governed by 49 C.F.R. §213.9. The trial court denied BNSF's motion for summary judgment on the issue of speed. The order entered does not reflect a reason for this decision, but during the hearing, the trial court stated that Mrs. Melton's claim of negligence based on speed was not preempted.

The trial court's decision on preemption, as a matter of law, was error. As stated in ***Niles,*** uniformity demanded by FRSA can only be achieved if the federal rail safety regulations are applied to FELA claims. ***Niles,*** 560 F.3d at 430. While the ***Niles*** court was

addressing a ballast issue, we believe the reasoning of *Niles* is analogous to a claim for negligence based on speed. In fact, the *Niles* court relied on the reasoning from cases in two other circuits, which found that FELA claims based on speed were preempted. *Id.* However, question of facts still exist as to the speed limit of track 51 and whether the rail car was within that speed limit. We note that Mrs. Melton argues that BNSF had an internal policy that the rail cars only be moving at four miles per hour. However, for the purposes of preemption, internal regulations are irrelevant. *Michael*, 74 F.3d at 274; *see also* *St. Louis Southwestern Ry Co. v. Pierce*, 68 F.3d 276, 278 (8th Cir. 1995). For purposes of summary judgment, BNSF must demonstrate that there are no disputed facts as to the speed limit of track 51 based on 49 C.F.R. § 213.9, and the speed at which the rail car was moving. BNSF must also show that the rail car was within federal regulations. Because there are disputed material facts as to the speed limit and the speed of the car, we affirm the trial court's denial of summary judgment on the issue of speed.

## Conclusion

In sum, we affirm the trial court's denial of a directed verdict. However, we reverse the trial court's denial of BNSF's motion for new trial. Also, we reverse the trial court's grant of summary judgment to BNSF on the issues of vegetation and ballast, and affirm the trial court's denial of summary judgment on all remaining issues. All other issues are pretermitted. We remand to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to Appellant, BNSF Railway Company, and it surety, and one-half to Appellee, Laura Jan Melton for which execution may issue if necessary.

_____

J. STEVEN STAFFORD, JUDGE