IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2013 Session

**ANNE PAYNE v. CSX TRANSPORTATION, INC.**

**Appeal from the Circuit Court for Knox County**
**No. 2-231-07      Harold Wimberly, Judge**

**No. E2012-02392-COA-R3-CV - Filed December 27, 2013**

Winston Payne brought this action against his former employer, CSX Transportation, Inc., under the Federal Employers' Liability Act ("FELA"), alleging that CSX negligently exposed him to asbestos, diesel fumes, and radioactive materials in the workplace causing his injuries.[1] The jury returned a verdict finding (1) that CSX negligently caused Payne's injuries; (2) that CSX violated the Locomotive Inspection Act or safety regulations regarding exposure to asbestos, diesel fumes, and radioactive materials; and (3) that Payne's contributory negligence caused 62% of the harm he suffered. The jury found that "adequate compensation" for Payne's injuries was $8.6 million. After the jury returned its verdict, the trial court, *sua sponte*, instructed the jury, for the first time, that, under FELA, its finding that CSX violated a statute or regulation enacted for the safety of its employees meant that plaintiff would recover 100% of the damages found by the jury. The court sent the jury back for further deliberations. It shortly returned with an amended verdict of "$3.2 million @ 100%." Six months after the court entered judgment on the $3.2 million verdict, it granted CSX's motion for a new trial, citing "instructional and evidentiary errors." The case was then assigned to another trial judge, who thereafter granted CSX's motion for summary judgment as to the entirety of the plaintiff's complaint. The second judge ruled that the causation testimony of all of plaintiff's expert witnesses was inadmissible. We hold that the trial court erred in instructing the jury, *sua sponte*, on a purely legal issue, *i.e.*, that the jury's finding of negligence per se under FELA precluded apportionment of any fault to the plaintiff based upon contributory negligence, an instruction given after the jury had returned a verdict that was complete, consistent, and based on the instructions earlier provided to it by the trial court. We further hold that, contrary to the trial court's statements, the court did not make any prejudicial evidentiary rulings in conducting the trial, and that its jury instructions, read as a whole, were clear, correct, and complete. Consequently, the trial court erred in granting a new trial. We remand to the trial court. We direct the first trial judge to

---

[1]The primary illness was lung cancer from which the original plaintiff died. We refer in this opinion to his health issues as "injuries" or "injury."

review the evidence as thirteenth juror and determine whether the jury verdict in the amount of $8.6 million is against the clear weight of the evidence. If it is not, the trial judge is directed to enter judgment on that verdict. If, on the other hand, the trial judge finds that the larger verdict is against the clear weight of the evidence, the court is directed to enter a final judgment on the jury's verdict of $3.2 million. The trial court's grant of summary judgment is rendered moot by our judgment. However, in the event the Supreme Court determines that our judgment is in error, we hold that the grant of summary judgment was not appropriate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded with Instructions**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., and D. KELLY THOMAS, SP.J, joined.

Richard N. Shapiro, Virginia Beach, Virginia; Sidney W. Gilreath and Cary L. Bauer, Knoxville, Tennessee, for the appellant, Anne Payne.

Randall A. Jordan, Karen Jenkins Young, and Christopher R. Jordan, St. Simons Island, Georgia; Evan M. Tager and Carl J. Summers, Washington, D.C.; John W. Baker, Jr. and Emily L. Herman-Thompson, Knoxville, Tennessee, for the appellee, CSX Transportation, Inc.

OPINION

I.

Payne worked for CSX as a trainman and a switchman from 1962 until his retirement in 2002. In 2005, he was diagnosed with lung cancer. He underwent extensive medical treatment, including 43 rounds of chemotherapy and 44 radiation treatments. He filed this FELA action in 2007, alleging that CSX was negligent in exposing him to asbestos, diesel fumes, and radioactive material in the course of his employment, resulting in his injuries, particularly his lung cancer. He also alleged that CSX was guilty of negligence per se when it violated several statutes or regulations enacted for the safety of its employees. CSX denied liability and alleged that Payne's contributory negligence, specifically his cigarette smoking, caused his injuries. Payne started smoking in 1962, smoked a pack a day on average for approximately 26 years, and quit in 1988. After Payne died on February 24, 2010, his widow, Anne Payne, was substituted as plaintiff.

A ten-day jury trial took place over the course of two weeks in November 2010. After the close of proof, the trial court instructed the jury and provided it with a verdict form

including special interrogatories.  To aid the reader, the jury verdict form is hereinafter set forth in its entirety, with the jury's handwritten answers in italics:

1. Was the defendant negligent as defined in these instruction[s]?  *Yes*

2. If you answered yes to question one, did that negligence cause in whole or in part the harm suffered by plaintiff?  *Yes*

3. If negligent, was the defendant negligent with regard to:
    Asbestos exposure?  *Yes*
    Diesel exposure?  *Yes*
    Radiation exposure?  *Yes*
If your answer to any of these is yes, did negligence of the defendant cause in whole or in part the harm suffered by plaintiff as a result of:
    Asbestos exposure  *Yes*
    Diesel exposure  *Yes*
    Radiation exposure  *Yes*

4. A. Did the defendant violate the Locomotive Inspection Act or any regulation concerning locomotives read to you regarding asbestos and was any such violation a legal cause of plaintiff's harm?  *Yes*

B. Did the defendant violate the Locomotive Inspection Act or any regulation concerning locomotives read to you regarding diesel fumes and was any such violation a legal cause of plaintiff's harm?  *Yes*

C. Did the defendant violate any regulation read to you regarding the operation of railroad cars and transportation of radioactive materials read to you and was any such violation a legal cause of harm suffered by plaintiff?  *Yes*

5. If you answered yes to question two, was plaintiff negligent with regard to harm he suffered and did his negligence cause in whole or in part the harm he suffered?  *Yes*

-3-

6. If your answer to question five is yes, to what extent, expressed in percentage, did plaintiff's negligence cause in whole or in part the harm he suffered? _62%_

7. What amount of money do you find, without deduction for any negligence which you may find on plaintiff's part, will fairly represent adequate compensation? $ _8.6 million_

When the jury returned to the courtroom following its deliberations, the following colloquy took place between the trial court and the jury foreman:

THE COURT: If you will refer to the verdict, you can tell me briefly. Question No. 1, was the defendant negligent as defined in these instructions?

JURY FOREMAN: Yes.

THE COURT: Question No. 2, did that negligence cause, in whole or in part, the harm suffered by the plaintiff?

JURY FOREMAN: Yes.

THE COURT: Question No. 3, was the defendant negligent with regard to asbestos exposure?

JURY FOREMAN: Yes.

THE COURT: With regard to diesel exposure?

JURY FOREMAN: Yes.

THE COURT: With regard to radiation exposure?

JURY FOREMAN: Yes.

THE COURT: Did the negligence of the defendant cause, in whole or in part, the harm suffered by plaintiff as a result of asbestos exposure?

JURY FOREMAN: Yes.

-4-

THE COURT: Diesel exposure?

JURY FOREMAN: Yes.

THE COURT: Radiation exposure?

JURY FOREMAN: Yes.

THE COURT: Did the defendant violate the Locomotive Inspection Act or any regulation concerning locomotives regarding asbestos, and was any such violation a legal cause of the plaintiff's harm?

JURY FOREMAN: Yes.

THE COURT: Did the defendant violate the Locomotive Inspection Act or any regulation concerning locomotives regarding diesel fumes, and was any such violation a legal cause of the plaintiff's harm?

JURY FOREMAN: Yes.

THE COURT: Did the defendant violat[e] any regulation regarding the operations of railroad cars and transportation of radioactive materials, and was any such violation a legal cause of harm suffered by the plaintiff?

JURY FOREMAN: Yes.

THE COURT: Question 5, was the plaintiff negligent with regard to the harm he suffered?

JURY FOREMAN: Yes.

THE COURT: Your answer was yes. To what extent, expressed in percentages, did the plaintiff's negligence cause, in whole or in part, the harm that he suffered?

JURY FOREMAN: 62 percent.

THE COURT: *And finally, what amount of money do you find, without deduction for any [of] the negligence, that would fairly represent adequate compensation in this case?*

JURY FOREMAN: 8.6 million.

(Emphasis added.)

Immediately after the jury foreman confirmed the jury's written responses establishing the plaintiff's total damages at $8.6 million, the following took place:

THE COURT: Okay. Now, let me further inform you that by answering yes to questions listed on this form in Part 4 about the Inspection Act or any regulations, by answering yes to all of those questions, the concept of contributory negligence may not apply in this case. In that situation, the plaintiff would receive the entire amount of money that you have listed on the answers to the seventh question. If that is what you intend in this particular case, please indicate by raising your right hand?

(Jury foreman raised hand).

THE COURT: Okay. That is something that we hadn't talked about before, but . . . we need to know if that is your intention. Again, by answering yes to the questions listed under Part 4 of the verdict form, the effect of yes answers there is that the recovery would be 100 percent of the amount listed on the response to Question 7.

\*        \*        \*

THE COURT (to the jury): What is your feeling now?

JURY FOREMAN: Could we have a moment to discuss that?

THE COURT: All right.
(Jury dismissed from courtroom at 4:05 p.m.)
(Jury returned to courtroom at 4:13 p.m.)

> THE COURT: Based on a previous discussion, [jury foreman]
> Mr. Alexander, it is the intention of the jury that the plaintiff
> recover a total amount of what?
>
> JURY FOREMAN: $3.2 million.
>
> THE COURT: If everyone agrees with that, raise your right
> hand. The jury has raised their right hand indicating that's their
> feeling in this particular case.

The amended verdict form returned by the jury after the jury's eight-minute further deliberation had a handwritten line through the "8.6 million" amount and a handwritten notation of "3.2 million @ 100%."

On March 7, 2011, the trial court entered judgment against CSX in the amount of $3.2 million in compensatory damages. CSX moved under Tenn. R. Civ. P. 50.02 for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court conducted a hearing on CSX's motion on August 19, 2011. At the end of the hearing, the court stated as follows:

> The Court has come to this conclusion, that the motion for new
> trial is warranted. I hate to admit this because a lot of the
> problems come back to me, but in particular the jury instructions
> I feel were incomplete, therefore insufficient and inadequate and
> incorrect. This was illustrated graphically by their response and
> what we had to do to try to understand what they meant.
>
> During the trial itself I agree that there were too many things
> that had been ruled improperly for the jury to consider that were
> considered and presented to the jury, and probably the worst of
> those was when we started talking about this thyroid cancer
> which he apparently didn't have. The Court took it upon itself
> to make a comment about that and made a comment which could
> well have been misinterpreted. I just made – did not express
> what I tried to express by saying that is not part of this lawsuit.
> It could be understood that he actually had that and it was not
> being considered now.
>
> I deeply regret what I just said because, you know, I like to get
> cases over with, but at the same time I feel that this one was

probably not handled appropriately and needs to be handled again, whether by me or somebody else. So that's the extent of what I want to say today.

The trial court entered an order on September 6, 2011, granting CSX a new trial and stating, "[t]he Court makes this decision based upon specific prejudicial errors including, but not limited to, instructional and evidentiary errors that resulted in an injustice to Defendant and, *independent of considerations regarding sufficiency of the evidence*, warrant a new trial." (Emphasis added.) The case was subsequently transferred to a second Knox County circuit court judge, the Honorable Dale C. Workman. Judge Workman granted CSX's motion to exclude the causation testimony of all of the plaintiff's expert witnesses – the same testimony that had earlier been found to be admissible by the first trial judge, Judge Wimberly, and had been thereafter presented to the jury. Judge Workman then granted CSX's motion for summary judgment on the ground that there was no expert testimony establishing causation, and dismissed the case. Plaintiff timely filed a notice of appeal.

## II.

Plaintiff raises the issues of whether the trial court erred in: (1) further instructing the jury and permitting it to further deliberate after it had returned a proper verdict; (2) granting CSX a new trial; and (3) granting CSX summary judgment and dismissing the complaint. CSX does not raise any separate issues. The sufficiency of the evidence to support the jury's verdict(s) is not before us.

## III.

We first address the trial court's jury instructions. The trial court instructed the jury in accordance with FELA, the federal statute that provides a cause of action for employees of railroads engaged in interstate commerce who are injured on the job. *See* 45 U.S.C.A. § 51; *see also* **Spencer v. Norfolk S. Rwy. Co.**, No. E2012-01204-COA-R3-CV, 2013 WL 3946118 at *1, n.1 (Tenn. Ct. App. E.S., filed July 29, 2013). In **Spencer**, this Court recently reiterated the following background and principles governing a FELA claim:

> "The impetus for the [Federal Employers' Liability Act ("FELA"), 45 U.S.C.A. §§ 51–60] was that throughout the 1870's, 80's, and 90's, thousands of railroad workers were being killed and tens of thousands were being maimed annually in what came to be increasingly seen as a national tragedy, if not a national scandal." **CSX Transp., Inc. v. Miller**, 159 Md. App. 123, 858 A.2d 1025, 1029 (Md. Ct. Spec. App. 2004). "In

response to mounting concern about the number and severity of railroad employees' injuries, Congress in 1908 enacted FELA to provide a compensation scheme for railroad workplace injuries, pre-empting state tort remedies." *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007) (citing *Second Employers' Liability Cases*, 223 U.S. 1, 53-55, 32 S.Ct. 169, 56 L.Ed. 327 (1912)). FELA was passed to extend statutory protection to railroad workers because of the high rate of injury to workers in that industry. *Blackburn v. CSX Transp., Inc.*, No. M2006-01352-COA-R10-CV, 2008 Tenn. App. LEXIS 336, 2008 WL 2278497, at *8 (Tenn. Ct. App. May 30, 2008); *Reed v. CSX Transp., Inc.*, No. M2004-02172-COA-R3-CV, 2006 Tenn. App. LEXIS 620, 2006 WL 2771029, at *2 (Tenn. Ct. App. Sept. 26, 2006). "In adopting FELA, Congress created a remedy that 'shifted part of the human overhead of doing business from employees to their employers.' " *Pomeroy v. Ill. Cent. R.R. Co.*, No. W2004-01238-COA-R3-CV, 2005 Tenn. App. LEXIS 294, 2005 WL 1217590, at *9 (Tenn. Ct. App. May 19, 2005) (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994)). Congress recognized that the railroad industry was better able to shoulder the cost of industrial injuries and deaths than were injured workers or their families. *Miller*, 159 Md. App. at 131, 858 A.2d 1025 (citing *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 431-32, 78 S.Ct. 394, 2 L.Ed. 2d 382 (1958)). "[FELA] was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations." *Pomeroy*, 2005 Tenn. App. LEXIS 294, 2005 WL 1217590, at * 17 (quoting *Wilkerson v. McCarthy*, 336 U.S. 53, 68, 69 S.Ct. 413, 93 L.Ed. 497 (1949) (Douglas, J., concurring)). The Federal Employers' Liability Act provides, in relevant part:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in

> its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C.A. § 51. The statute is broad and remedial, and it is to be liberally construed in order to accomplish the aforementioned purposes. *Blackburn*, 2008 Tenn. App. LEXIS 336, 2008 WL 2278497, at *8; *Reed*, 2006 Tenn. App. LEXIS 620, 2006 WL 2771029, at *2.

"Unlike a typical workers' compensation scheme, which provides relief without regard to fault, Section 1 of FELA provides a statutory cause of action sounding in negligence. . . ." *Sorrell*, 549 U.S. at 165. Under FELA, the railroad-employer's liability is premised upon its negligence. *Reed*, 2006 Tenn. App. LEXIS 620, 2006 WL 2771029, at *2. In order to recover, an employee must show:

> (1) that an injury occurred while the employee was working within the scope of his employment;
>
> (2) that the employment was in the furtherance of the railroad's interstate transportation business;
>
> (3) that the employer railroad was negligent; and
>
> (4) that the employer's negligence played some part in causing the injury.

*Id.* (*citing Jennings v. Ill. Cent. R.R. Co.*, 993 S.W.2d 66, 69-70 (Tenn. Ct. App. 1998)). . . . FELA does not define negligence. *Id.* When considering whether an employer was negligent under FELA, "courts are to analyze the elements necessary to establish a common law negligence claim." *Id.* (*citing Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990); *Davis v. Burlington Northern, Inc.*, 541 F.2d 182 (8th Cir. 1976), cert. denied, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed. 2d 613 (1976)). The issue of negligence is to be determined "by the common law principles as established and applied in federal courts." *Reed*, 2006 Tenn. App. LEXIS 620, 2006 WL 2771029, at *2

(citations omitted). Thus, the plaintiff must prove the traditional elements of negligence: duty, breach, foreseeability, and causation. *Id.* (citing *Robert v. Consol. Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987)). However, FELA deviated from the common law by abolishing the railroad's common law defenses of assumption of the risk, § 54, and it rejected contributory negligence in favor of comparative negligence, § 53. *Sorrell*, 549 U.S. at 166, 168. In FELA cases, an employee's negligence does not bar relief, but the employee's recovery is diminished in proportion to his fault. *Id.* at 166.

"Under FELA, the employer railroad has a duty to provide a reasonably safe workplace." *Reed*, 2006 Tenn. App. LEXIS 620, 2006 WL 2771029, at *3 (citing *Bailey v. Cent. Vt. Ry.*, 319 U.S. 350, 352, 63 S.Ct. 1062, 1062, 87 L.Ed. 1444 (1943); *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 58 (2d Cir.1996); *Adams*, 899 F.2d at 539). This does not mean that the railroad has the duty to eliminate all workplace dangers, but it does have the "duty of exercising reasonable care to that end." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 269 (6th Cir. 2007) cert. denied, 555 U.S. 994, 129 S.Ct. 489, 172 L.Ed. 2d 356 (2008) (citing *Baltimore & Ohio S. W.R. Co. v. Carroll*, 280 U.S. 491, 496, 50 S.Ct. 182, 74 L.Ed. 566 (1930)). "A railroad breaches its duty to its employees when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe." *Id.* (citing *Tiller v. Atl. C.L.R. Co.*, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610 (1943); *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 811 (6th Cir. 1990)). In other words, "a railroad breaches its duty when it knew, or by the exercise of due care should have known that prevalent standards of conduct were inadequate to protect the plaintiff and similarly situated employees." *Id.* at 269-70 (internal quotations omitted).

*Spencer*, 2013 WL 3946118 at *1-2 (footnotes omitted) (quoting *Jordan v. Burlington N. Santa Fe R.R. Co.*, No. W2007-00436-COA-R3-CV, 2009 WL 112561 at *5-6 (Tenn. Ct. App. W.S., filed Jan. 15, 2009)).

-11-

As already stated, CSX asserted the defense of contributory negligence. FELA provides as follows regarding contributory negligence:

> In all actions on and after April 22, 1908 brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided*, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

45 U.S.C.A. § 53 (italics in original). Plaintiff did not argue that decedent Payne was not contributorily negligent to some extent by virtue of his years of smoking. Rather, the plaintiff asserted that the FELA's proviso quoted above, allowing for a full recovery notwithstanding contributory negligence if the defendant violated "any statute enacted for the safety of employees," applied because CSX violated the Locomotive Inspection Act[2] and

---

[2] The Locomotive Inspection Act is codified at 49 U.S.C.A. § 20701 and provides in pertinent part:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances–
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

various safety regulations[3] enacted or promulgated for employees' safety. The United States Supreme Court recognized nearly a century ago that, under FELA,

> contributory negligence on the part of the employee does not operate even to diminish the recovery where the injury has been occasioned in part by the failure of the carrier to comply with the exactions of an act of Congress enacted to promote the safety of employees. In that contingency the statute abolishes the defense of contributory negligence, not only as a bar to recovery, but for all purposes.

*Grand Trunk W. Ry. Co. v. Lindsay*, 233 U.S. 42, 49-50 (1914). The federal courts have referred to a violation of a statute or regulation enacted for the safety of employees as "negligence per se." *See, e.g., Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156, 1158-59 (3rd Cir. 1992); *Walden v. Ill. Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992).

In this case, the trial court instructed the jury with respect to the issue of contributory negligence prior to its initial deliberations; but the court did not inform the jury of the legal effect of a finding that CSX was guilty of negligence per se. Neither side requested a jury instruction on negligence per se, and neither side objected at any time to the lack of such an instruction. On appeal, neither side has provided any legal authority suggesting that a jury instruction is required on the FELA's provision regarding negligence per se, *i.e.*, that, as a matter of law, "no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C.A. § 53. Plaintiff, noting that the jury's second damage award of "$3.2 @ 100%" is reduced by roughly 62% of its initial damage award of $8.6 million, argues that the trial court, by its instruction after the jury returned its verdict, essentially invited the jury to nullify FELA's 45 U.S.C.A. § 53 provision ("Section 53"). Plaintiff cites *Shepard v. Grand Trunk W. R.R.*, No. 92711, 2010 WL 1712316 (Ohio Ct. App., filed Apr. 29, 2010),

---

[3] FELA provides that certain safety regulations are deemed to be statutory authority for FELA purposes:

> A regulation, standard, or requirement in force, or prescribed by the Secretary of Transportation under chapter 201 of Title 49, or by a State agency that is participating in investigative and surveillance activities under section 20105 of Title 49 is deemed to be a statute under sections 53 and 54 of this title.

45 U.S.C.A. § 54a.

-13-

a FELA case involving a fact pattern similar in many respects to the case at bar,[4] in which the Ohio Court of Appeals stated the following:

> Here, the jury was specifically instructed that Shepard alleged that two statutory violations were at issue: (1) the FELA, which requires negligence and provides for comparative negligence and (2) the [Locomotive Inspection Act], which imposes absolute liability. Under FELA, the jury found Grand Trunk negligent and also found Shepard comparatively negligent. But because the jury further found that the railroad had violated the LIA, under well-settled law, it was not entitled to apportionment of damages under a comparative negligence defense.
>
> *       *       *
>
> Grand Trunk's contention that the *post-verdict discussions with the jury demonstrated that they believed the award was going to be reduced* is not persuasive – a party may not challenge the validity of the verdict using post-verdict discussions with jurors. The jury was properly instructed and is presumed to have followed those instructions.

*Id.*, 2010 WL 1712316 at *13-14 (emphasis added; internal citations omitted). The implication of the italicized language is clear – the jury in **Shepard** was not instructed on the legal effect of its finding of negligence per se, and the court there found no error in the trial court's failure to advise the jury of this legal effect.

We do not find any reason for the jury to be instructed regarding the legal consequences of a finding that an employer railroad violated a safety statute or regulation. As the Tennessee Supreme Court has stated, "[i]t is for the jury to determine the facts and the trial judge to apply the appropriate principles of law to those facts." **Smith Cty. Educ. Ass'n v. Anderson**, 676 S.W.2d 328, 338 (Tenn. 1984) (holding that "it was improper and unnecessary to submit questions which required the jury to determine whether or not the Board negotiated in good faith" because "[w]hether the Board committed acts that amount to a failure to negotiate in good faith was a question for the trial judge and not the jury."). Section 53 of the FELA eliminating contributory negligence when a defendant is guilty of

---

[4] The plaintiff in **Shepard** alleged injuries resulting from negligent exposure to diesel fumes and asbestos. The plaintiff in that case "admitted to a long history of heavy cigarette smoking." 2010 WL 1712316 at *2.

-14-

negligence per se provides a principle of law to be applied by the trial court after the jury has determined the facts. "We entrust the responsibility of resolving questions of disputed fact, including the assessment of damages, to the jury." *Meals ex rel. Meals v. Ford Motor Co.*, No. W2010-01493-SC-R11-CV, 2013 WL 4673609 at *3 (Tenn., filed Aug. 30, 2013) (citing Tenn. Const. art. I, § 6; *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 594 (Tenn. 1994)). Regarding the jury's resolution of factual questions and its verdict, we have observed that

> [t]he jury's verdict is the foundation of the judgment in civil cases where the parties have invoked their constitutional or statutory right to a jury trial. It represents the jury's final statement with regard to the issues presented to them. The verdict, whether general or special, is binding on the trial court and the parties unless it is set aside through some recognized legal procedure. Accordingly, neither the trial court nor the parties are free to disregard a jury's verdict once it has been properly returned.

*Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 94 (Tenn. Ct. App. 1996); *see also Jordan*, 2009 WL 112561 at *17 (stating that "[t]he United States Supreme Court has repeatedly emphasized the preeminence of jury decisions in FELA matters.") (internal quotation marks omitted).

In this case, the jury was instructed on all of the pertinent questions upon which it was properly called to decide – whether the defendant was negligent; whether the defendant's negligence caused plaintiff's injury; whether the plaintiff was negligent and caused his own injury; the percentage of fault attributed to plaintiff by his own negligence; whether the defendant violated the Locomotive Inspection Act or regulations enacted for the safety of employees; whether any such violation caused plaintiff's injury; and the amount of damages. The jury answered these questions in a verdict form that has been reproduced in its entirety earlier in this opinion. The jury resolved all of the issues in a clear, complete, and consistent manner. There is nothing contradictory in the verdict. Under these circumstances, in keeping with the litigants' "constitutionally protected right to have the disputed factual issues in their case decided by a jury," *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 209 (Tenn. Ct. App. 2008), we have recognized "the well-known principle that it is the trial court's duty to enter a judgment that is consistent with the jury verdict."[5] *Leverette v. Tenn. Farmers Mut. Ins. Co.*, No. M2011-00264-COA-R3-CV, 2013 WL 817230 at *29 (Tenn. Ct. App. M.S., filed Mar. 4, 2013).

---

[5]This duty is, of course, concomitant with the trial court's duty to decide whether to approve the verdict as thirteenth juror in ruling on a motion for new trial, as further discussed later in this opinion.

In ***Leverette*** we noted some "narrow exceptions" to this general principle, including one that "is found at Tenn. R. Civ. P. 49.02, which gives the trial court some leeway *when there are inconsistencies between a general verdict and a special verdict*." ***Id.*** (Emphasis added.) Rule 49.02 provides as follows:

> The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation and instruction as may be necessary to enable the jury to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. *When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers*. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdict, or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but shall return the jury for further consideration of its answers and verdict or shall order a new trial.

(Emphasis added); *see also* **Concrete Spaces, Inc. v. Sender**, 2 S.W.3d 901, 911 (Tenn. 1999) (observing that, although "[w]here a judgment is based upon inconsistent findings by a jury it is the duty of the appellate court to reverse and remand the case for a new trial, . . . [w]ell-settled law requires courts to construe the terms of a verdict in a manner that upholds the jury's findings, if it is able to do so.").

In the present case, the trial court, presented with a consistent and complete jury verdict, nevertheless and *sua sponte,* instructed the jury that the legal effect of its finding of negligence per se was that "the concept of contributory negligence may not apply in this case." The trial court then asked the jury "what is your feeling now?" We agree with plaintiff's argument that the trial court's new and unnecessary further instruction and

invitation to reconsider its verdict was a prejudicial abuse of discretion.[6]  It is true, as a general principle, that "a jury may amend or change their verdict at any time before they have been discharged, or, if they bring in an informal or insufficient verdict, the court may send them back to the jury room, with directions to amend it, and put it in proper form." *George v. Belk*, 49 S.W. 748, 749 (Tenn. 1899); *see also State v. Williams*, 490 S.W.2d 519, 520 (Tenn. 1973); *Riley v. State*, 227 S.W.2d 32, 34-35 (Tenn. 1950); *Oliver v. Smith*, 467 S.W.2d 799, 804 (Tenn. Ct. App. 1971).  But in these cases citing and applying this general rule, the jury's initial verdict was defective in some manner.  There is no defect in the jury's first verdict in this case.  Tenn. R. Civ. P. 49.02 mandates that "[w]hen the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers."  Under these circumstances, where the jury was properly and completely instructed and returned a consistent and complete verdict in accordance with the court's instructions, we hold it was error for the trial court to *sua sponte* further instruct the jury upon an unnecessary matter and invite the jury to reconsider the amount of damages it initially awarded.

IV.

The trial court, in its memorandum opinion granting a new trial, stated that "in particular the jury instructions I feel were incomplete, therefore insufficient and inadequate and incorrect."  Our review of the record and transcript leads us to the conclusion that the "incompleteness" the trial court mentions is a reference only to the initial absence of an instruction regarding the legal effect of a finding of negligence per se.  This conclusion is supported by the trial court's further comment that the "incompleteness" of the jury instructions "was illustrated graphically by their response and what we had to do to try to understand what they meant."  Our conclusion is further bolstered by the fact, as we are about to demonstrate, that the instructions given to the jury before they retired initially to consider their verdict were correct and complete.  The trial court did not specify any other error in its jury instructions in either its order granting a new trial or its incorporated memorandum opinion.  We do not believe the trial court ruled that there were any other reversible errors in its instructions.  Despite this belief, we have reviewed all of CSX's objections to the jury

---

[6]This is not to say, however, that a trial court's initial instruction to a jury that informs the jury of the effect of its negligence per se finding under FELA would be erroneous, and our opinion should not be construed as so holding.  We merely hold that such an instruction is not required, and that the trial court's further instruction in this case after the jury deliberated and returned a verdict was unwarranted and resulted in error.

instructions, both those raised by CSX orally after the jury was instructed as well as those in the later motion for a new trial.[7]

In reviewing the trial court's disposition of a motion for new trial in a FELA case, we apply the federal standard. *Melton v. BNSF Rwy. Co.*, 322 S.W.3d 174, 181 (Tenn. Ct. App. 2010). In *Melton*, we observed that

> [u]nder the federal standard, the trial court has the power and duty to order a new trial whenever, in its judgment, this action is required to prevent an injustice. Common grounds for granting a new trial include the verdict is against the clear weight of the evidence, a prejudicial error of law, or misconduct affecting the jury. We review the trial court's decisions on motions for new trial on an abuse of discretion standard.

*Id.* (internal citations and quotation marks omitted). In this case, the trial court gave no indication that it was granting a new trial based on either misconduct affecting the jury or insufficiency of the evidence. The trial court's ruling was grounded in its perceived errors of law.

The following principles apply to our review of the trial court's jury instructions:

> "Jury instructions must be correct and fair as a whole, although they do not have to be perfect in every detail." *Pomeroy* [*v. Illinois Central R.R. Co.*, No. W2004-01238-COA-R3-CV], 2005 Tenn. App. LEXIS 294, 2005 WL 1217590, at *3 [ (Tenn. Ct. App. May 19, 2005) ] (citing *Wielgus v. Dover Indus.*, 39 S.W.3d 124, 131 (Tenn. Ct. App.2001)). Jury instructions must be plain and understandable, and inform the jury of each applicable legal principle. *Id.* On appeal, we review jury instructions in their entirety and in context of the entire charge. *Id.* We will not invalidate a jury charge if, when read as a whole, it fairly defines the legal issues in the case and does not mislead the jury. *Hensley v. CSX Transp., Inc.*, No. E2007-00323-COA-R3-CV, 278 S.W.3d 282, 2008 Tenn. App. LEXIS

---

[7]None of CSX's numerous objections to the jury instructions included an argument that the trial court should have instructed the jury on the legal effect of its finding that CSX was negligent per se. As already noted, neither party requested such an instruction, and neither party objected to the absence of such an instruction in the given instructions.

147, 2008 WL 683755, at *2 (Tenn. Ct. App. Mar. 14, 2008)
*perm. app. denied*, 2008 Tenn. LEXIS 867 (Tenn. Nov. 17,
2008). "The trial court should give requested special jury
instructions when they are a correct statement of the law,
embody the party's legal theory, and are supported by the
proof." **Pomeroy**, 2005 Tenn. App. LEXIS 294, 2005 WL
1217590, at *3 (citing **Otis v. Cambridge Mut. Fire Ins. Co.**,
850 S.W.2d 439, 445 (Tenn.1992)). "However, the trial court
may decline to give a special instruction when the substance of
the instruction is covered in the general charge." **Id.** We will
not reverse the denial of a special request for an additional jury
instruction where the trial court fully and fairly charged the jury
on the applicable law. **Id.**

**Spencer**, 2013 WL 3946118 at *3 (quoting **Jordan**, 2009 WL 112561 at *11).

In its motion for new trial, CSX argued that the trial court's instruction on causation
was erroneous, asserting that the court "erroneously failed to charge the jury on proximate
causation." The trial court instructed the jury on causation as follows:

The mere fact that a person suffered harm, injury, illness or
death standing alone without more does not permit an inference
that the harm, injury, or death was caused by anyone's
negligence.

You have heard reference to the Federal Employers' Liability
Act or FELA. That law provides in part that every common
carrier by railroad engaging in commerce between any of several
states shall be liable for damages to any person suffering injury
while he is employed by such carrier in such commerce for such
injury resulting in whole or in part from the negligence of any
of the officers, agents or employees of such carrier, and such
injury would include illness or death.

\*     \*     \*

So, again, the burden of proof in any case such as this is upon
the plaintiff to establish by a preponderance of the evidence,
first, that the defendant was negligent in one or more of the
particulars alleged by plaintiff and, second, that the defendant's

-19-

negligence caused or contributed in whole or in part to the harm, illness or death of the plaintiff.

The purpose of this action, illness, harm or death is said to be caused or contributed to by an act or failure to act when it appears from a preponderance of the evidence the act or failure to act played any part, in whole or in part, in bringing about or actually causing illness or death.

So if you should find from the evidence in the case that any negligence of the defendant contributed in any way toward illness or death suffered by the plaintiff you may find that plaintiff's illness or death was caused by the defendant's act or failure to act.

Stated another way, an act or failure to act is a cause of illness or death if the illness or death would not have occurred except for the act or failure to act even though the act or failure to act combined with other causes. So this does not mean that the law recognizes only one cause of illness or death consisting of only one factor, or one thing or the conduct of only one person. On the contrary, many factors or things where the conduct of two or more persons may operate at the same time either independently or together to cause illness, harm or death, and in such a case each may be a cause for the purposes of determining liability in a case such as this.

As can be seen, CSX correctly argued that the trial court's instruction does not include the proximate cause standard. The United States Supreme Court addressed the appropriate FELA standard of causation in *CSX Transp. v. McBride*, 131 S. Ct. 2630 (2011), stating as follows:

We conclude that the Act [FELA] does not incorporate "proximate cause" standards developed in nonstatutory common-law tort actions. The charge proper in FELA cases, we hold, simply tracks the language Congress employed, informing juries that a defendant railroad caused or contributed to a plaintiff employee's injury if the railroad's negligence played any part in bringing about the injury.

-20-

* * *

> FELA's language on causation . . . "is as broad as could be framed." ***Urie v. Thompson***, 337 U.S. 163, 181, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Given the breadth of the phrase "resulting in whole or in part from the [railroad's] negligence," and Congress' "humanitarian" and "remedial goal[s]," we have recognized that, in comparison to tort litigation at common law, "a relaxed standard of causation applies under FELA." ***Gottshall***, 512 U.S., at 542-543, 114 S.Ct. 2396. In our 1957 decision in ***Rogers*** [***v. Mo. Pac. R.R.***, 352 U.S. 443], we described that relaxed standard as follows:
>
> > "Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U.S., at 506, 77 S.Ct. 443.

***McBride***, 131 S. Ct. at 2634, 2636. The ***McBride*** Court clarified that "***Rogers*** announced a general standard for causation in FELA cases, not one addressed exclusively to injuries involving multiple potentially cognizable causes," ***id.*** at 2639, and conclusively determined that a proximate cause instruction is not required in FELA cases. In the present case, the trial court's causation instruction closely tracks, and in one instance directly quotes, FELA's causation language. We find no error in the trial court's causation instruction.

CSX also argued in its motion for new trial that the trial court erred in giving an instruction on contributory negligence that provided a different causation standard from the one applicable to the defendant. The United States Supreme Court has ruled that in a FELA case the same standard of causation applies in assessing both the negligence of a defendant railroad and the contributory negligence of a plaintiff employee. ***Norfolk S. Rwy. Co. v. Sorrell***, 549 U.S. 158, 160 (2007). In this case the trial court instructed the jury on contributory negligence as follows:

> [I]n addition to denying any negligence on the part of the defendant caused harm to the plaintiff, a defendant may also allege as a further defense that some negligence on the part of the plaintiff himself was a cause of any harm that plaintiff suffered or was the sole and only cause of any harm that the

plaintiff suffered. We refer to that defense as contributory negligence.

Contributory negligence then is fault on the part of a plaintiff which corroborates in some degree with the negligence of another and so helps to bring about harm to the plaintiff or is itself the sole cause of harm to the plaintiff.

By the defense of contributory negligence, the defendant is in effect alleging that even though the defendant may have been guilty of some negligent act or failure to act which was one of the causes of harm suffered by the plaintiff, the plaintiff himself by his own failure to use ordinary and reasonable care for his own safety also contributed to one of the causes of harm suffered by the plaintiff.

With respect to the defense of contributory negligence, the burden is on the defendant claiming the defense to establish by a preponderance of the evidence the claim that the plaintiff was at fault, the negligence on the part of the plaintiff contributed to one of the causes of harm suffered by the plaintiff.

As to contributory negligence, the FELA, the law in question provides in part, "In all actions brought against any railroad to recover damages for personal injury to an employee, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the negligence attributable to the employee.["] So if you should find from a preponderance of the evidence that the defendant was guilty of negligence but the plaintiff was also guilty of negligence and such negligence on the part of the plaintiff caused any harm to the plaintiff, then the total award of damages to the plaintiff must be reduced by an amount equal to the percentage of fault or contributory negligence chargeable to the plaintiff.

If you should find that the defendant was not guilty of negligence or the defendant was negligent but such negligence was not a cause in whole or in part of harm suffered by the plaintiff, then your verdict would be for the defendant.

This contributory negligence instruction given by the trial court does not suggest a different causation standard than the one applicable to the defendant's negligence. It does not define "causation" differently from the court's earlier instruction. It directly quotes the FELA's provision regarding contributory negligence. We find no error in the trial court's contributory negligence instruction.

CSX also asserted error in the trial court's foreseeability instruction, arguing that it was insufficient as a matter of law. We recently addressed a similar challenge in *Spencer*. There we stated as follows:

> "[R]easonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence." *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963). In *Gallick*, the United States Supreme Court noted that the jury in that case correctly had been charged with regard to reasonable foreseeability of harm, and stated:

>> The jury had been instructed that negligence is the failure to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances; and that defendant's duty was measured by what a reasonably prudent person would anticipate as resulting from a particular condition – "defendant's duties are measured by what is reasonably foreseeable under like circumstances" – by what "in the light of the facts then known, should or could reasonably have been anticipated."

> *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 83 S.Ct. 659, 665-66, 9 L.Ed.2d 618 (1963) (footnotes omitted).

> With regard to foreseeability and notice in FELA cases, the Sixth Circuit has explained:

>> The law is clear that notice under the FELA may be shown from facts permitting a jury to infer that

the defect could have been discovered by the exercise of reasonable care or inspection:

> Under familiar law, defendant could not be convicted of negligence, absent proof that such defect was known, or should or could have been known, by defendant, with opportunity to correct it. This rule is applicable to FELA actions where negligence is essential to recovery. The establishment of such an element, however, may come from proof of facts permitting a jury inference that the defect was discovered, or should have been discovered, by the exercise of reasonable care or inspection.

*Szekeres v. CSX Transportation, Inc.*, 617 F.3d 424, 430–31 (6th Cir. 2010) (quoting *Miller v. Cincinnati, New Orleans & Tex. Pac. Ry. Co.*, 317 F.2d 693, 695 (6th Cir. 1963)).

Similarly, our own Supreme Court has stated:

> To prove a breach of duty under the FELA, an employee must show that the railroad " 'knew, or by the exercise of due care should have known' that prevalent standards of conduct were inadequate to protect [the employee] and similarly situated employees."

*Mills v. CSX Transportation, Inc.*, 300 S.W.3d 627, 633 (Tenn. 2009) (quoting *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269-70 (6th Cir. 2007)).

*Spencer*, 2013 WL 3946118 at *3-4 (footnote omitted; some internal citations omitted). The trial court in this case instructed the jury on foreseeability as follows:

> [D]eciding whether ordinary care was exercised in the given case, the conduct in question must be viewed in the light of all surrounding circumstances as shown by the evidence in the case at the time.

Because the amount of care exercised by reasonably prudent and careful persons varies in proportion to the dangers known to be involved in what is being done, it follows that the amount of caution required in the exercise of ordinary care will vary with the nature of what is being done and all the surrounding circumstances shown by the proof in the case.

To put it another way, if any danger that should be reasonably foreseen increases so the amount of care required by law increases.

We find this instruction to be substantially similar to the one approved by the Supreme Court in *Gallick*. We find no error in the court's foreseeability instruction.

CSX also argued that the trial court erred in failing to charge the jury with its special request that CSX was only required to provide a reasonably safe workplace, not a perfect work environment. CSX submitted the following jury instruction:

Although the Railroad is duty-bound to provide a reasonably safe place to work, this does not mean that the Railroad must provide a perfect work environment. The Railroad Defendant is not bound to anticipate every possible incident or accident which might occur, because a railroad is necessarily attended by some danger and it is impossible to eliminate all danger. The law does not make the Defendant an insurer of the safety of its employees, nor of the safety of the places in which they work. The railroad is not held to an absolute responsibility for the reasonably safe condition of the places where the Plaintiff might work, but only to the duty of exercising reasonable care to that end, the degree of care being commensurate with the danger reasonably to be anticipated.

To the extent that this instruction incorporates a correct statement of the law, the essence of the instruction was provided to the jury in our earlier-referenced instructions on duty of care, its definitions of negligence, causation, and foreseeability, and the following additional instruction of the trial court:

[t]he employer is required to use ordinary and reasonable care under the circumstances to maintain and keep places of work in a reasonably safe condition for the employee.

-25-

This does not mean the employer is a guarantor or insurer of the safety of the place of work. The extent of the employer's duty is to exercise ordinary care under the circumstances then existing[.]

CSX contends that the trial court erroneously charged the jury on both a pre-1976 and post-1976 version of 49 C.F.R. § 174.700, a federal regulation governing the shipping of radioactive material. Part of plaintiff's theory presented at trial was that CSX negligently caused Payne's exposure to radioactive materials shipped in and out of a metal scrap yard in Knoxville called David Witherspoon Industries, Inc. ("DWI"). DWI was licensed to receive and recycle scrap metal contaminated with low levels of radioactivity. CSX presented testimony of a former DWI employee that DWI received contaminated metal from 1964 until 1972. The trial court instructed the jury on the pre-1976 and post-1976 versions of 49 C.F.R. § 174.700 as follows:

A 1961 regulation provided that no person should remain in a car containing radioactive material unnecessarily, and the shipper must furnish the carrier with such information and equipment as is necessary for the protection of the carrier's employees.

[A] section from 1976 provides a person may not remain unnecessarily in a railcar containing radioactive materials.

CSX argues that the court erred by instructing the post-1976 regulation because DWI "stopped receiving contaminated scrap altogether in 1972." Plaintiff responds by arguing that it was not conclusively established that no radioactive shipments went either in *or out* of DWI after 1972. We agree with plaintiff. Plaintiff presented the videotaped deposition of a corporate representative of CSX, William Bullock, who, when asked whether CSX or its corporate predecessors "did any monitoring of train cars that may have been calling in or out of" DWI prior to 1985, responded, "we didn't, but at the same time we didn't think there was a concern" that "we needed to be looking into radiation exposure of our workers." In short, there was evidence from which the jury could have reasonably concluded that plaintiff was exposed to radioactivity from railcar shipments out of DWI after 1976, and consequently the trial court did not err in its instruction regarding the post-1976 federal regulation regarding the shipping of radioactive materials.

CSX raised several other objections to the jury instructions in its motion for new trial, including the court's refusal to specifically instruct the jury according to CSX's special requests (1) regarding actual or constructive notice of an alleged defective condition and

notice as to "known dangers" in the workplace; (2) to charge the jury that the "mere presence of potentially harmful substances" in the workplace is insufficient by itself to establish negligence; (3) to charge the jury that "there should be no bias against a corporate defendant"; (4) regarding the proper scope of damages, specifically that no punitive damages or loss of consortium damages for Payne's widow should be awarded; and (5) to charge the jury that it must not speculate or guess as to whether CSX's negligence caused plaintiff's damages. We have reviewed all of these objections and arguments, comparing CSX's 40 written special requests for jury instructions with the trial court's instructions. We find that, to the extent the requested instructions are relevant and correctly state the law, they were adequately covered and presented to the jury in the court's instructions. In instructing a jury, "the trial court may decline to give a special instruction when the substance of the instruction is covered in the general charge." **Pomeroy**, 2005 WL 1217590, at *3; *see also* **Otis**, 850 S.W.2d at 439. "The fact that a special request for jury instruction asserts a correct rule of law does not make it proper jury charge material." **Godbee v. Dimick**, 213 S.W.3d 865, 881 (Tenn. Ct. App. 2006).

The jury instructions presented by the trial court in this case, viewed as a whole, are correct, fair and complete. The court's jury charge fairly defined the legal issues in the case. The instructions were not misleading to the jury. The jury returned a verdict in accordance with the court's clear instructions; the only indication of potential confusion came after the court's further unnecessary and erroneous instruction after the verdict. We therefore hold that none of the trial court's jury instructions provide grounds for a new trial.

V.

In its order granting a new trial, the trial court based its ruling on "specific prejudicial errors including, but not limited to, instructional and evidentiary errors." The court did not specify what evidentiary rulings it considered to be erroneous. The trial court stated the following in its oral memorandum opinion:

> During the trial itself I agree that there were too many things
> that had been ruled improperly for the jury to consider that were
> considered and presented to the jury, and probably the worst of
> those was when we started talking about this thyroid cancer
> which he apparently didn't have.

The trial court did not make any other specific references regarding other evidentiary decisions at trial. The evidence regarding thyroid cancer was briefly presented during plaintiff's cross-examination of one of CSX's medical experts who apparently misdiagnosed Payne with thyroid cancer at some point during his treatment.

The trial in this case was lengthy.[8] The jury heard the case over a two-week period. The testimony of 26 witnesses was presented. The trial transcript is over 2,500 pages long, and the exhibits are sequentially marked up to number 574. Against this backdrop, the following is the entirety of the objected-to evidence of thyroid cancer, which came into proof by way of the cross-examination of Dr. John Craighead, a medical expert called by CSX.

> Q: Of course, you saw a thyroid cancer in Mr. Payne, didn't you?
>
> A: Yes.
>
> Q: And that's caused by radiation, isn't it?
>
> A: That's one of the contributing causes, yes. It's not the only cause. Most individuals we don't know what the cause was.

CSX objected and moved for a mistrial or a curative instruction from the trial court. The trial court provided the following curative instruction to the jury:

> Before we get to the next witness, in the cross examination of the last witness, mention was made of the term thyroid cancer. As you previously heard, there's no claim in this case that the plaintiff suffered from thyroid cancer or that that caused him anything that is the subject matter of this case.

CSX argues that a new trial was warranted because the curative instruction was insufficient in that the "court never unambiguously told the jury that Payne did not have thyroid cancer." We hold, however, that there is very little substantive difference between the statement that "the plaintiff did not suffer from thyroid cancer" and "there's no claim in this case that the plaintiff suffered from thyroid cancer." The clear import of the trial court's curative instruction was that thyroid cancer was not a part of the case and that the jury should disregard the brief evidence of Dr. Craighead's misdiagnosis of thyroid cancer. "The jury is presumed to have followed the trial court's instructions." *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 375 (Tenn. 2006); *see also Johnson v. Lawrence*, 720 S.W.2d 50, 60 (Tenn. Ct. App. 1986) ("We must assume th[at] the jury followed the trial court's [curative] instruction unless there is proof to the contrary. If error was committed . . . in

---

[8]Indeed, in its final remark to the jury, the trial court thanked the jury for serving "on the longest case that the court has had in more than 20 years" and stated, "I actually don't know of a longer case in this court, so that's something."

asking the question, it was cured by the trial court's instruction."). We hold that the trial court's curative instruction effectively cured any error in the presentation of the testimony regarding thyroid cancer. Given the court's timely and accurate curative instruction, any prejudice to CSX resulting from the improper evidence was remedied.

CSX also argues that a new trial was warranted due to the plaintiff's presentation of a powerpoint slide regarding cesium contamination of an area in Oak Ridge where Payne worked. During the 1960s, an area of railroad track near the Y-12 facility in Oak Ridge became contaminated with low levels of cesium, a radioactive element. Payne worked in that area occasionally for about a year of his career. In the 1980s, the U.S. Department of Energy undertook a remedial cleanup of the contaminated area, removing a section of track and the ballast rock from the roadbed. In this case, CSX moved in limine before trial to exclude any evidence of cesium contamination. The trial court declined to grant the motion, taking it under consideration to see how the proof developed at trial, with the intention of ruling on objections as they came up. During trial, plaintiff's counsel agreed not to present cesium evidence in his case-in-chief. During cross-examination of one of CSX's witnesses, plaintiff's counsel put up a powerpoint slide saying "Oak Ridge Y-12 spur cleanup; tracks closed down; cesium radiation contamination; tracks, ballast rock cleaned; remediated by DOE." CSX objected, and the trial court said, "sustain the objection. The jury will disregard that slide." Plaintiff did not present any other evidence of cesium exposure. CSX later presented expert testimony that there was no risk to the public or railroad employees from cesium radiation at Oak Ridge.

After the trial court sustained the objection and instructed the jury to disregard the slide, CSX moved for a mistrial. The trial court denied the motion. After the trial, CSX renewed its motion, "based upon [its] contention that it was entitled to a mistrial on the issues relating to thyroid cancer and cesium contamination at Oak Ridge." The trial court again denied the motion for mistrial.

CSX argues that the cesium evidence was so prejudicial that a new trial was warranted. We disagree. The trial court sustained CSX's objection and excluded the evidence. The court then instructed the jury to disregard the slide, and there is no reason to presume the jury did not follow the court's instruction. There was no error in the trial court's resolution of this issue.

CSX points to several other evidentiary decisions made by the trial court that it says were erroneous, and argues that the trial court *may* have agreed that it erred in ruling on some of them, and that the trial court *may* have relied upon these supposed errors in granting a new trial. These arguments include assertions that the trial court erred in allowing several lay witnesses, including Payne himself, to testify about the presence of asbestos in his

-29-

workplaces and his exposure to asbestos, and that the court erred in allowing testimony that the DWI site where Payne worked was contaminated with radioactivity from plutonium and that it was eventually designated as a Superfund site. We have reviewed these issues, and find that they address matters of admissibility upon which the trial court has broad discretion. We have discerned no error in the trial court's rulings on these evidentiary matters, and certainly nothing that would warrant a new trial under the circumstances. We hold that the trial court erred in granting CSX a new trial.

VI.

A motion for a new trial made after a jury verdict triggers the trial court's duty to independently assess the evidence and either approve or disapprove the verdict. Because the trial court is reviewing and weighing the evidence as did the jury, this is generally known as the "thirteenth juror" rule. *See* **Huskey v. Crisp**, 865 S.W.2d 451, 454 (Tenn. 1993) (observing that the thirteenth juror rule "applies only in the context of a motion for a new trial, for it is only there that the trial court has the duty to decide if the jury verdict is contrary to the weight of the evidence."). In **Blackburn v. CSX Transp.,** No. M2006-01352-COA-R10-CV, 2008 WL 2278497 (Tenn. Ct. App. M.S., filed May 30, 2008), this Court determined that there are significant differences between the Tennessee standard for reviewing the evidence as thirteenth juror and the federal standard, and held that the federal standard applies in FELA cases, stating as follows:

> The standard federal courts employ in deciding whether to grant a new trial is whether the verdict is against the "clear weight" of the evidence. When ruling on motions for new trials based upon sufficiency of the evidence, the Sixth Circuit Court of Appeals has stated the standard thusly:
>
> > A court may set aside a verdict and grant a new trial when it is of the opinion that the verdict is against the clear weight of the evidence; however, new trials are not to be granted on the grounds that the verdict was against the weight of the evidence unless that verdict was unreasonable. Thus, if a reasonable juror could reach the challenged verdict, a new trial is improper.
>
> The trial court may not set aside the verdict to grant a new trial if the judge would have reached a different verdict. 6A MOORE'S FEDERAL PRACTICE § 59.08[5] (1996).

-30-

> The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is *quite clear* that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice.
>
> *Id.* In Tennessee, the law is clear that if a motion for a new trial is filed, then the trial court is under a duty to independently weigh the evidence and determine whether the evidence "preponderates" in favor of or against the verdict.
>
> \*          \*          \*
>
> [A]t a very basic level, the standards are quite different since the Tennessee standard uses "preponderance" of the evidence, while the federal standard requires that the verdict be outweighed by the "clear" weight of the evidence. Under state law if a judge is "dissatisfied" with a jury verdict then the trial court is at liberty to order a new trial. Under the federal standard, the verdict must be unreasonable. Under state law a court must make an independent decision, while under federal law if a reasonable juror could have reached the verdict, the trial court is to defer. We believe that the differences between the standards are both apparent and significant.

*Id.*, 2008 WL 2278497 at \*5-7 (internal citation, footnote and section headings omitted); *accord **Jordan***, 2009 WL 112561 at \*17 n.12. The ***Blackburn*** Court concluded "that federal law provides the standard to determine whether to grant a new trial in a FELA case tried in state court." *Id.* at \*11.

In this case, the trial court did not have an opportunity to approve or disapprove the jury verdict awarding damages in the amount of $8.6 million. We find it appropriate to remand the case for the first trial judge to conduct a review of the evidence under the above-described federal standard and determine whether the $8.6 million verdict is against the clear weight of the evidence. *See **Blackburn***, 2009 WL 2278497 at \*17 (noting that "[a]n appellate court cannot fulfill this role" of determining "whether the verdict was against the

clear weight of the evidence"). If the trial court concludes that the jury's $8.6 million verdict is not against the clear weight of the evidence, then the court is directed to enter judgment in that amount. If the trial court concludes to the contrary, then the court is directed to enter judgment in plaintiff's favor in the amount of $3.2 million, because the verdict assessing damages in that amount has already been duly approved by the trial court when it entered its judgment. We note in this regard that the trial court, in its order granting a new trial, stated that it "applie[d] the appropriate Federal standard for considering motions for new trial in FELA cases" and that it was basing its ruling granting a new trial on "instructional and evidentiary errors" – matters involving questions of law – "independent of considerations regarding sufficiency of the evidence." All of this tells us that the trial court was satisfied that the $3.2 million verdict was not against the clear weight of the evidence.

## VII.

Our holding and remand to the trial court with directions to enter judgment in plaintiff's favor in the amount of either $8.6 million or $3.2 million renders moot the question of whether the second trial judge erred in excluding the testimony of the plaintiff's expert witnesses and granting CSX summary judgment. Nevertheless, we have reviewed the issue and hold that the trial court erred in excluding the causation testimony of plaintiff's expert witnesses, all of whom were found to be qualified by the first trial judge in the face of the same challenge and all of whom testified at trial.

## VIII.

The judgment of the trial court ordering a new trial is reversed. The judgment of the trial court granting CSX summary judgment is reversed as moot. This case is remanded to the trial court with instructions to the first trial judge to review the evidence at trial and enter judgment in accordance with our directions. Costs on appeal are assessed to the appellee, CSX Transportation, Inc.

_____

CHARLES D. SUSANO, JR., PRESIDING JUDGE